UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ARTHUR D. PRINGLE III, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO: 2:09-CV-022RM |
| | ) | |
| MARISA GARCIA, et al. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Arthur D. Pringle III, ("Pringle"), by counsel, files this Response to Defendants' Motion to Dismiss, and in support of same states the following:

**I. Introduction**

Defendants' Motion to Dismiss is an attempt to stave off Pringle's claims arising from Defendants' numerous fraudulent activities committed against unsuspecting victims over the years. Defendants, Marisa Garcia and Sergio Garcia through their entities Kerusso Konstruction Kompany, LLC ("KKK, LLC") and Rehab Lending Tree, LLC ("RLT, LLC") fraudulently acquired funds from Pringle under the pretext of loans "earmarked" for acquiring, rehabbing, selling and renting properties. Sergio Garcia, Marisa Garcia, and Kerusso Real Estate, LLC ("KRE, LLC") were individual guarantors for such "loans." (Sergio Garcia; Marisa Garcia; Kerusso Real Estate, LLC; Kerusso Konstruction Kompany, LLC; and Rehab Lending Tree, LLC are hereinafter collectively referred to as "Sergio's Entities.") Sergio's Entities conspired with the remaining Defendants to fraudulently conceal and transfer properties and funds in a scheme to prevent Pringle from recouping his investments.

Sergio Garcia approached Pringle for numerous "loans" as documented in Exhibits A through M of the Second Amended Complaint. Sergio's Entities signed thirteen separate notes and other loan documents. Sergio Garcia claimed Pringle's "loans" would fund the acquisition

1

and rehabilitation of properties. Sergio's Entities would rent or sell the rehabilitated properties, and RLT, LLC would provide "loans" to select buyers to facilitate sales.[1] The "loans" between Sergio's Entities and Pringle are outlined in Paragraphs 1 through 44 and Paragraphs 56.a through 56.t of the Second Amended Complaint. On January 31, 2009, the outstanding principal and interest on Pringle's loans was $5,305,272.90.[2] After Sergio's Entities defaulted on their loan obligations, Pringle learned his funds were not used for the originally advertised purposes. Later, Pringle learned, through vigorous investigations, the existence of other victims suffering from Sergio's Entities schemes and artifices.

Pringle learned that other persons loaned money to Sergio's Entities, including Terry Baldin ("Baldin") and Adolfo Bautista ("Bautista"). Similar to Pringle's "loans," Sergio Garcia sought "loans" from Baldin and Bautista to fund the real estate activities of Sergio's Entities. Baldin made a $10,000 loan to Sergio Garcia for his real estate activities, and ended up losing $5,000.00 in principal. Bautista made various loans to Sergio's Entities for their real estate activities and ended up losing principal of approximately $375,000.00.[3]

Also, Jonathan Petersen ("Petersen") provided loans to Sergio's Entities under the pretext of funding real estate activities for Sergio's Entities, and Petersen lost funds in excess of $500,000.00. The combined losses of Pringle, Baldin, Bautista and Petersen exceed six million dollars. Despite obtaining over six million dollars, Sergio Garcia, Marisa Garcia, KKK, LLC and KRE, LLC filed for bankruptcy in 2009 shortly after Pringle pursued recovery of his funds

---

[1] Second Amended Complaint, Paragraph 56.i.
[2] See Paragraph 14 of the Second Amended Complaint.
[3] See Paragraphs 54.a through 54.i and 55.a through 55.g of the Second Amended Complaint.

in this case.[4]  This action started out as a simple lawsuit to recover on the promissory notes and loan documents, but the investigation has disclosed a complex scheme.

Pringle filed this Second Amended Complaint to recover his funds and the assets purchased with his monies that were improperly diverted in a complex scheme.  Pringle asserts that each designated Defendant participated in a continuing conspiracy with Sergio Garcia to fraudulently conceal and transfer funds and properties away from Sergio's Entities into the hands of the other listed Defendants, (Defendants, Cindy Lyons; Hector Rodriguez; Elva Garcia; Sergio Garcia II; Tomasa Garcia; Miguel Garcia; Mannuel Garcia a/k/a Manny Garcia; Jose Barajas, Graciela Barajas, Kerusso Asset Management, LLC; KRE, LLC; Real Estate Express, LLC; Rehab Lending Tree, LLC; REO Outlet LLC ("REO Outlet"); Jesse's Construction LLC ("Jesse's Construction"); Rental Solution Management LLC; Alpha & Omega Real Estate LLC ("Alpha & Omega"); Steemmm Real Estate LLC ("Steemmm");  IHB Real Estate LLC ("IHB"); Artemio Carreno; Cindy Lyons; Joe Wittig; Alfredo Deanda; Ellie Deanda; Real Estate Express, LLC; and Tim Overman are hereinafter referred to as the "Transferee Defendants.")  The concealment and transfer was designed to prevent Pringle and others from recovering their original loan amounts.

Each Defendant played a unique but important role in Sergio's Entities' scheme.  In furtherance of their conspiracy, each Defendant committed a predicate act of a Civil RICO claim, and alternatively, each Defendant was involved in a transfer or transfers that fall within the scope of the Indiana Fraudulent Transfers Act.  For example, the Second Amended Complaint sets forth how Hector Rodriguez and Sergio Garcia committed wire fraud, bank fraud and mail fraud

---

[4] Sergio and Marisa Garcia filed for bankruptcy on July 10, 2009 under Case No. 09-22828-jpk; KKK, LLC filed for bankruptcy on July 21, 2009 under Case No. 09-22955; and KRE, LLC filed for bankruptcy on July 21, 2009 under Case No. 092954.  All three bankruptcies are hereinafter collectively referred to as the "Bankruptcies."

involving Petersen and Franklin Financial through transfers and multiple mortgages of 930 Mohawk Drive, Crown Point, Indiana. Jose Barajas, Graciela Barajas, Jesse's Construction and REO Outlet willingly conspired with Sergio Garcia to divert rents that should have been collected by the conservator appointed in the Bankruptcies to collect cash collateral. The other Transferee Defendants engaged in mail fraud when they received properties from Sergio Garcia, Marisa Garcia, KKK, LLC and KRE, LLC prior to those individuals and entities filing for bankruptcy protection. The details involving each defendant are explained below, but the sum and substance of the allegations reveal a complex scheme to avoid the repayment of over six million dollars in fraudulently obtained loans.

## II.  Standard

Defendants' motion seeks to dismiss Pringle's Second Amended Complaint by focusing on a few select paragraphs and either taking them out of context or mischaracterizing the allegations. When reviewing claims sought to be dismissed under Rule 12(b)(6), a court should "ask whether the plaintiffs can prove any set of facts supporting their claims that would entitle them to relief." American United Logistics, Inc. v. Catellus Development Corporation, 319 F.3d 921, 925-926 (7th Cir. 2002). Moreover a court should "accept all the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving parties." Id. at 926. All the allegations in Pringle's Second Amended Complaint point to a complex fraudulent scheme aimed at obtaining well over six million dollars through fraudulent "loan" transactions that subsequently concealed and diverted assets to prevent any recovery of such funds.

## III.  Analysis

**A.    Pringle has adequately pled the elements of a Civil RICO claim.**

4

Pringle has pled the requisite elements for both his Civil RICO and fraudulent transfer claims, and Defendants' motion should fail. "RICO penalizes people who associate with or operate 'enterprises' by means of a 'pattern of racketeering activity.'" McCool v. Strata Oil Co., 972 F2d 1452, 1464 (7th Cir. 1992) citing 18 U.S.C. § 1962(a)-(d). "The elements of a Civil RICO claim . . . are 1) a violation of the RICO statute, including proof that the defendant has participated in a pattern of racketeering, and 2) an injury to business or property." Id. So long as Pringle has pled the two elements of a Civil RICO claim, Defendants' motion to dismiss must fail.

As to the element of "injury to business or property," Pringle has suffered injury of property, because the total outstanding principal and interest on Pringle's loans alone is $5,305,272.90 as of January 31, 2009. See Paragraph 14 of the Second Amended Complaint. Likewise, "Pringle has been damaged based on the loss of Pringle's investments, which remain unpaid to date." See Paragraph 135 of the Second Amended Complaint. Such factual allegations confirm that Pringle's Second Amended Complaint pled the required element of injury to business or property.

The crux of Defendants' motion to dismiss falls on whether Pringle alleged the second element of a Civil RICO claim, which is the "violation of the RICO statute, including proof that defendant has participated in a pattern of racketeering." Id. "'Racketeering' is defined as any one of a number of predicate offenses, including wire and mail fraud. Id. citing 18 U.S.C. § 1961(1). "A 'pattern' is (loosely) defined as 'at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity.'" Id. citing 18 U.S.C. § 1961(5). "Finally, section 1964 provides a civil remedy for RICO violations: 'any person injured in his business or property by reason of a violation of

5

section 1962 . . . may sue therefore . . . and shall recover threefold the damages he sustains and . . . a reasonable attorney's fee.' Id. citing 18 U.S.C. § 1964 (1988).

Fed. R. Civ. Pro. 9(b) requires a plaintiff "at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." Slaney v. International Amateur Athletic Federation, 244 F.3d 580, 597 (7th Cir. 2001). The bulk of Pringle's claims against the Transferee Defendants who filed this Motion to Dismiss relate to their efforts to conceal and divert assets to prevent recovery by Pringle and other creditors, and the relevant sections of the Second Amended Complaint demonstrate that defendants either misconstrued or completely ignored certain paragraphs in their motion to dismiss brief.

**1. REO Outlet participated in bankruptcy fraud by collecting rents that should have been collected by the court appointed conservator.**

As to REO Outlet, Pringle outlines the specific Civil RICO facts in Paragraphs 49, 73-77, 78.c, 84 of the Second Amended Complaint. Originally, Ms. Tracee Jackson paid a $5,000.00 deposit to REO Outlet to purchase property at 407 Detroit Street in Hammond, but the sale fell through. See Subparagraphs 49.a through 49.d. of Second Amended Complaint. REO Outlet did not return to Ms. Jackson her $5,000.00 deposit. Id. Rather than returning her $5,000.00, REO Outlet forced Ms. Jackson to rent 7613 Van Buren, Gary, Indiana that was property belonging to the Bankruptcy Estate of Garcias, Cause No. 09-22828-jpk. Id. REO Outlet applied Ms. Jackson's $5,000.00 deposit to rent on Sergio Garcia's property at 7613 Van Buren.

The $5,000.00 rent should have been turned over to the conservator appointed to collect cash collateral arising during the Bankruptcies as explained in Paragraphs 73 through 76 of the

6

Complaint.[5]  7613 Van Buren was a property subject to the Garcias' Bankruptcy, but Pringle alleges that REO Outlet and Garcia conspired to conceal and divert the $5,000.00. See Paragraph 78.c of the Second Amended Complaint. REO Outlet conspired with Sergio Garcia to commit bankruptcy fraud under 18 U.S.C. § 152 that covers the fraudulent transfer or concealment of property in a bankruptcy case. REO Outlet asserted control over property of the Bankruptcy Estate by leasing it to a third party. REO Outlet retained the $5,000.00 in funds that should have gone to the conservator, and REO Outlet and Sergio Garcia committed bankruptcy fraud by concealing the cash collateral contrary to the Bankruptcy Court's orders. Asserting control over that property and diverting the rent were the predicate acts for Pringle's Civil RICO complaint against REO Outlet and Sergio Garcia.

REO Outlet's actions demonstrate the conspiracy aimed at preventing recovery by Pringle and other creditors in the Bankruptcies. The scheme exercises control over properties owned by the Garcia Entities and diverts the cash to other entities or persons without any legitimate business purpose, and in violation of Bankruptcy law in this case.

**2. Jose Barajas, Graciela Barajas and Jesse's Construction participated in bankruptcy fraud by creating false invoices that covered up the diversion of rents that should have been collected by the court appointed conservator.**

Jose Barajas and Graciela Barajas are the brother-in-law and sister of Sergio Garcia, and both are the principals behind Jesse's Construction. See Paragraph 90 of the Second Amended Complaint. Graciela Barajas, Jose Barajas and Jesse's Construction provided fraudulent invoices

---

[5] Pringle and Pilgrim Financing, LLC petitioned the Bankruptcy Court for proper accounting and segregation of cash collateral rents, based on prior suspicious activity of Sergio's Entities. In response to the requests of Pringle and Pilgrim, the Bankruptcy Court appointed Allied Realty as the Court appointed conservator in the Bankruptcies, charged with the responsibility of collecting rents that were cash collateral subject to the interests of creditors within the Bankruptcies. See Paragraphs 72 through 75 of Second Amended Complaint.

that were used in the February 16, 2011, Bankruptcy Court hearing to explain why cash collateral was diverted away from the court appointed conservator. The fraudulent invoices did not appear until after Pringle had filed a motion to dismiss the Garcias' Bankruptcy, alleging that cash collateral or rents were diverted. See Paragraphs 86 through 91 of the Second Amended Complaint.

Jesse's invoices, from March through August of 2010, were used to show the cost of work allegedly done to rental properties that were subject to the Bankruptcies. The cost of the work suspiciously equaled the rent that was diverted to yet another entity operated by Garcia family members.[6] The testimony from tenants during the motion to dismiss proceedings confirmed that the majority of work on those invoices was not done. See Paragraph 91 of the Second Amended Complaint. Graciela Barajas, Jose Barajas and Jesse's Construction fraudulently prepared those invoices to conceal and divert rent that should have gone to the court appointed conservator. Id. The invoices were attached to the Verified Statement that is specifically identified in paragraph 77 of the Second Amended Complaint as being filed on February 15, 2011 with docket entry number 788 in the Garcias' Bankruptcy.

Either Jose Barajas, Graciela Barajas and Jesse's Construction knowingly and fraudulently obtained concealed cash collateral rents in a bankruptcy case because the work was never done or they supplied false documentation to assist Sergio's Entities in diverting rents in violation of a cash collateral order entered by a Federal Bankruptcy Court. See subparagraphs

---

[6] Sergio Garcia has used other companies that are started and controlled by his relatives to further his bankruptcy fraud scheme. For example, Rental Solutions Management, LLC is a company whose member and manager is Miguel Garcia, the Brother of Sergio Garcia. Rental Solutions Management, LLC was collecting rents from various tenants, despite the Bankruptcy Court's order that all cash collateral be collected by the conservator. See Paragraphs 76, 79 and 80 in the Second Amended Complaint.

paragraph 134a. through 134.e of the Second Amended Complaint. In either scenario, Graciela Barajas, Jose Barajas, Jesse's Construction, and Sergio's Entities committed bankruptcy fraud by concealing cash collateral that should have gone to the court appointed conservator, which in turn led to a predicate acts for Pringle's Civil RICO complaint against Graciela Barajas, Jose Barajas, Jesse's Construction, and Sergio's Entities.

**3. Elva Garcia, Sergio Garcia II, Alpha & Omega, Steemmm and IHB committed mail fraud when they assisted Sergio's Entities to transfer and conceal assets that should have been property of the bankruptcy estates for the Garcias, KKK, LLC and KRE, LLC.**

Elva Garcia and Sergio Garcia II are the children of Sergio Garcia and the principals behind Alpha & Omega, Steemmm and IHB. See Paragraphs 65.d, 65.e, and 116 to 124. Sergio Garcia II is also a member of KRE, LLC, and Elva is a member of KKK, LLC and RLT, LLC. See Paragraphs 3 and 4 of the Complaint. Elva Garcia, Sergio Garcia II, Alpha & Omega, Steemmm, and IHB were involved in setting up new companies through the mail and internet with the Indiana Secretary of State and participating in property transfers to divert assets from Pringle's reach. See Paragraphs 116 and 124 along with Exhibit MM to the Second Amended Complaint.

Exhibit MM lists specific details as to the real estate involved in the fraudulent transactions involved, the grantors and grantees involved in same, and the dates on which the transfers occurred. Alpha & Omega Real Estate received numerous transfers identified in Exhibit MM. As one example, Sergio Garcia's bankrupt entity, KRE, LLC transferred to Alpha & Omega 252 Roosevelt St., Gary, IN 46404 through a warranty deed dated September 2, 2008 and recorded with the Lake County Recorder's office on September 3, 2008. See Page 2 of Exhibit MM to Second Amended Complaint. KKK, LLC transferred 9501 Lincoln Ct., Crown Point, Indiana 46307 to Elva Garcia through a corporate deed dated June 28, 2007 and recorded

9

with the Lake County recorder's office on July 16, 2007. See Page 19 of Exhibit MM to the Second Amended Complaint.

Transferee Defendants used the Lake County Recorder's Office to record and mail original deeds for their fraudulent transfers, and the Lake County Treasurer's Office mails tax bills for such parcels. Many deeds state expressly that they are returned by mail to a person listed and that tax bills are mailed to a person listed thereon. See Paragraphs 126 and 127 of the Second Amended Complaint. "Racketeering activity" includes mail fraud under 18 U.S.C. § 1341 and bankruptcy fraud Under 18 U.S.C. § 152. 18 U.S.C. § 1961(1)(B&D). The Lake County Recorder's Office mails recorded deeds and the Lake County Treasurer mails tax bills through the U.S. Postal service as the customary practice in Lake County.

In the customary real estate practice within Lake County, the recorded deed directs the Lake County Treasurer to mail tax bills to a specific address, and the recorded deed provides the Lake County Recorder with an address to mail the original recorded deed. For Example, the Deeds used in the 930 Mohawk transaction, which are also itemized in Exhibit MM and further explained below, contain a Trustee Deed and a Warranty Deed attached as exhibits U and V to the Second Amended Complaint. The top of the Trustee Deed attached as Exhibit U states, "Mail Original Deed and Tax Bills To: Kerusso Konstruction Kompany, LLC 2931 Jewett Ave Highland, IN 46322" and the bottom of the Warranty Deed attached as Exhibit V states, Send tax statements to: Return Deed to 5544 Walter Street Hammond, Indiana 46320."[7] The dates for such mailings are also set forth in Exhibit MM, because the dates of the transfer documents and the recording of same are set forth in Exhibit MM.

---

[7] 5544 Walter Street Hammond, Indiana 46320 is presumably the address of the Grantee in such warranty deed Hector Rodriguez.

Elva Garcia, Sergio Garcia II, Alpha, Steemmm, and IHB knowingly and fraudulently attempted to conceal the properties belonging to the Bankruptcy Estates of the three debtors and used the mail for such purposes. See Paragraphs 134.h through 134.o in the Second Amended Complaint. Elva Garcia, Sergio Garcia II, Alpha, Steemmm, and IHB knowingly and committed mail fraud by fraudulently transferring and concealing properties that are the predicate acts for Pringle's Civil RICO complaint against Elva Garcia, Sergio Garcia II, Alpha, Steemmm, and IHB. See Paragraph 124, Exhibit MM, Paragraphs 125 through 130, and Paragraph 134.h through 134.o of Pringle's Second Amended Complaint. The complex scheme involved mainly family members and entities set up by those family members through the mail and internet to divert assets from the legitimate creditors of Sergio's Entities.

**4.     Hector Rodriguez participated in wire fraud and bank fraud when he participated in the 930 Mohawk transaction that defrauded Jonathan Petersen and Franklin Financial.**

Hector Rodriguez is the father-in-law of Sergio Garcia. See Paragraph 53.n of the Second Amended Complaint. Hector Rodriguez participated in the 930 Mohawk property transactions during the months of November and December of 2005. Hector Garcia acted as a straw person to facilitate the fraud on Jonathan Petersen and Franklin Financial.

Sergio Garcia purchased 930 Mohawk Drive and used a loan from Pilgrim Financing, LLC to accomplish the purchase. Pilgrim Financing is a company owned by Petersen. Petersen required that the property be place in trust and a mortgage be granted to secure the loan. After the acquisition was completed, Sergio misrepresented that he was an officer of the trust company that had title to the 930 Mohawk property, and he transferred 930 Mohawk approximately one month later to KKK, LLC who then conveyed it to Hector Rodriguez approximately one week later. Sergio Garcia used the "gap period" to accomplish the transfers without detection of the

prior mortgage to Pilgrim Financing. The "gap period" is the time between closing and the documents being recorded and being able to be tracked in the public records.

Hector Rodriguez induced Franklin Financial to loan him funds. Franklin Financial lent money to Hector Rodriguez under the impression that such property was being acquired by Hector Rodriguez free and clear of any preexisting mortgage. Franklin Financial would not have lent and wired any funds to Hector Rodriguez if it had known of the prior mortgage and loan with Pilgrim Financing. The actions of Sergio Garcia and Hector Rodriguez constituted bank fraud and wire fraud in their scheme to obtain funds from Franklin Financial which wired in funds after it thought it was acquiring a first mortgage on 930 Mohawk. They committed mail fraud by having the deed and tax bills mailed to Hector Rodriguez's address as provided in the Warranty Deed attached as Exhibit V to the Second Amended Complaint. The bank fraud, wire fraud and mail fraud are all predicate acts for Pringle's Civil RICO complaint against Hector Rodriguez.

No additional specific facts must be pled in the Second Amended Complaint because Pringle outlines in detail the fraudulent scheme to acquire funds and the subsequent scheme to divert funds and assets away from creditors. The Second Amended Complaint adequately pleads the essential "who, what, where and when" needed to specifically plead fraud a Civil RICO claim. 930 Mohawk Drive transactions are another example of the exact type of conduct that may be pursued under 18 U.S.C. § 1961.

**5.    Pringle adequately pled knowledge and intent elements in his Civil RICO claim pursuant to Fed. R. Civ. Pro. 9(b) and the applicable law governing Civil RICO.**

In Defendants' brief supporting their motion to dismiss, Defendants' repeatedly argued that there were no factual allegations as to the Defendants' knowledge. Defendants disregard a number of paragraphs in Pringle's Second Amended Complaint that allege Defendants'

knowledge.  For example, "REO Outlet LLC, Jose Barajas, Jesse's Construction, Graciela Barajas, Rental Solution Management LLC, and Miguel Garcia have *knowingly* and fraudulently concealed . . . cash collateral rents . . . (*emphasis* added)."  Paragraph 134.a of the Second Amended Complaint.  In another example, "Elva Garcia, Sergio Garcia II, Alpha, Steemmm, and IHB *knowingly* and fraudulently have attempted to conceal the properties (*emphasis* added)" at issue in the complaint. Paragraph 134.h of Second Amended Complaint.  Pringle also alleges, "Elva Garcia, Sergio Garcia II, Alpha, Steemmm, and IHB transfer and acquire properties belonging to the bankruptcy estates in the Garcia Bankruptcy, the Kerusso RE Bankruptcy and the KKK Bankruptcy, and that Sergio, Elva Garcia, Sergio Garcia II, Alpha, Steemmm, and IHB *knowingly* caused deeds and tax bills to be delivered by mail . . . (*emphasis* added)."  Paragraph 134.m. of the Second Amended Complaint.  The above cited paragraphs are a few examples of the paragraphs that allege knowledge on the part of the Defendants.[8]

In addition to overlooking the "knowingly" allegations set forth above, Defendants disregard Fed. R. Civ. Pro. 9(b).  "Allegations of fraud in a Civil RICO complaint are subject to . . . Fed. R. Civ. P. 9(b)." <u>Slaney v. International Amateur Athletic Federation</u>, 244 F.3d 580, 597 (7th Cir. 2001).  Fed. R. Civ. Pro. 9(b) provides, "(b) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. Pro. 9(b) requires a plaintiff "at a minimum, describe the two

---

[8] See also Paragraphs 134.b. through 134.e of the Second Amended Complaint.  (Defendants "knowingly and fraudulently . . ..").  See also Paragraphs 134.i. through 134.k. of the Second Amended Complaint, (Such paragraphs repeatedly allege that Defendants "knowingly and fraudulently" . . ..)  See also Paragraph 134.n. of the Second Amended Complaint. (Defendants "knowingly caused the Lake County Recorder's Office and the Lake Country Treasurer's Office to deliver originally recorded deeds and tax bills by mail as part of their bankruptcy fraud scheme. . ..")

predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." Slaney at 597.

Slaney does not add a requirement to plead a Civil RICO claim in addition to the generally alleged standard for knowledge under Fed. R. Civ. Pro. 9(b).  Moreover, in the context of the Indiana Fraudulent Transfers act, "Fraudulent intent can be inferred from certain indicia called 'badges of fraud.'" Lee's Ready Mix & Trucking, Inc. v. Creech, 660 N.E.2d 1033, 1037 (Ind. Ct. App. 1996).  These badges include:  1. transfer of property by a debtor during the pendency of a suit; 2. transfer of property that renders the debtor insolvent or greatly reduces his estate; 3. a series of contemporaneous transactions which strip a debtor of all property available for execution; 4. secret or hurried transactions not in the usual mode of doing business; 5. any transaction conducted in a manner differing from customary methods; 6. a transaction whereby the debtor retains benefits over the transferred property; 7. little or no consideration in return for the transfer; and 8. a transfer of property between family members. Greenfield v. Arden Seven Penn Partners, L.P., 757 N.E.2d 699, 703 (Ind. Ct. App. 2001), *trans. denied*.  Defendants' arguments relating to the lack of adequate allegations as to Defendants' knowledge are without merit because knowledge may be pled generally in the context of Civil RICO and inferred from the badges of fraud in the context of transfers between family members when dealing with the Indiana Fraudulent Transfers Act.

**6.    Defendants overlook law governing Defendants' various degrees of involvement within a conspiracy subject to a Civil RICO claim.**

Defendants' assertions that all named defendants must be identified with each of the specific facts required to plead a Civil RICO complaint is wrong.  Such arguments by

Defendants misconstrue the law on Civil RICO and fraudulent transfers, and ignores the Seventh Circuit's directions in Gagan v. American Cablevision, 77 F.3d 951, 961 (7th Cir. 1995).

> Accordingly, to prevail on his claim of conspiracy to violate §§ 1962(b) and (c), it was Gagan's burden to prove by a preponderance of the evidence:
>
> (1) that the defendants agreed to acquire or maintain an interest in or control of an enterprise or to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity;
>
> (2) that defendants further agreed that someone would commit at least two predicate acts to accomplish those goals.
>
> It was not necessary for Gagan to prove the actual commission of predicate acts in order for him to prove a RICO conspiracy. Schiffels, 978 F.2d at 348. Furthermore, the defendants need not have agreed to actually commit the predicate acts themselves or even to participate in the commission of those acts so long as they agreed that the acts would be committed on behalf of the conspiracy. United States v. Quintanilla, 2 F.3d 1469, 1484 (7th Cir. 1993); United States v. Campione, 942 F.2d 429, 437 (7th Cir. 1991); United States v. Glecier, 923 F.2d 496, 500 (7th Cir.), cert. denied, 502 U.S. 810, 116 L. Ed. 2d 31, 112 S. Ct. 54 (1991). Thus, to establish a conspiracy to violate RICO, it was sufficient that Theurer and Tripp acted on the defendants' behalf; the conspiracy defendants themselves did not have to be the ones to act. Neapolitan, 791 F.2d at 498 (RICO conspiracy liability is broad enough "to encompass those persons who while intimately involved in the conspiracy, neither agreed to personally commit nor actually participated in the commission of the predicate" offenses). Id. at 961.

Based on Civil RICO law as explained in Gagan, each individual need not be linked to every single part of the conspiracy. The mere agreement to conspire on a fraudulent plan and allow some individuals to execute that plan results in everyone involved with the conspiracy to being subject to Civil RICO claims. Defendants make no attempt to refute the additional predicate acts of wire fraud and mail fraud that Sergio's Entities engaged in to defraud Pringle of $5,305,272.90 as of January 31, 2009. See Paragraph 14 and See Paragraphs 56 through 67 of the Second Amended Complaint.

In their brief, Defendants seek to change the legal standards applicable to these claims, by arguing under a Civil RICO and fraudulent transfer claim, one defendant may not be found

liable, if their involvement did not arise to the involvement of others. "[A]ll that is required to support a RICO conspiracy violation is an agreement to acquire or maintain an interest in or control of an enterprise, or to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity." Id. at 962. "[D]efendants only had to agree to the commission of predicate acts which themselves could form a pattern of racketeering activity; the predicate acts need not have been committed." Id. Every single defendant may not have had the same level of involvement as other defendants.

Each defendant's involvement must be assumed to be true as set forth in the Second Amended Complaint based on the standards applicable to motions to dismiss, and defendants' involvement in these fraudulent schemes subjects them to liability under Civil RICO and fraudulent transfer law. Pringle has been limited by the parties' efforts to conceal the fraudulent activities, and Pringle's ability to discover the full extent of all fraudulent schemes has been limited by the bankruptcies and certain parties' failure to fully cooperate with pending 2004 examinations. Pringle has sufficiently pled a Civil RICO claim based on the standards governing a motion to dismiss, and the discovery process should expose the conspiracy set forth in Pringle's complaint and outlined in this response.

**B.     Pringle has adequately pled the elements of a claim for relief under the Indiana Fraudulent Transfers Act.**

Under the Indiana Fraudulent Transfers Act, the same operative facts pled for Pringle's Civil RICO claim provide the basis for an alternative claim of relief under Indiana law as to Defendants transferring and concealing properties. In the case of Manning v. Wallace (In re First Financial Associates), 371 B.R. 877 (N.D. Ind. Bankr. 2007), the Northern District of Indiana Bankruptcy Court explained the Indiana Fraudulent Transfers Act.

> Indiana law recognizes two different types of fraudulent conveyances -- those which are actually fraudulent and those which are only constructively so. An "actual fraudulent conveyance" is made with the intent to hinder, delay or delay one's creditors and may be challenged by any creditor regardless of whether their claim arouse before or after the transfer was made. I.C. 32-18-2-14. A "constructively fraudulent conveyance," on the other hand, has nothing to do with the intent or motivation surrounding the transfer. Instead, its fraudulent nature is determined solely by the circumstances of the transaction itself. A transfer is constructively fraudulent if it was made for less than reasonably equivalent value and the debtor was either insolvent at the time or became insolvent as a result of the transfer. I.C. 32-18-2-15. Only creditors existing at the time of the transaction may challenge a transfer as constructively fraudulent. Id. In either case though, whether it is actually fraudulent or only constructively so, the transfer may be avoided under Indiana law. Id. at 899.

Pringle's Civil RICO claims support an alternative claim for relief under the Indiana Fraudulent Transfers Act.

To allege actual fraud, Pringle must allege that the Defendants had actual intent to hinder or delay one's creditors. In the Second Amended Complaint, Pringle alleges that the transfers were done with actual intent to hinder or delay his recovery of funds they were done "knowingly." See Paragraph 142 of the Second Amended Complaint. To allege constructive fraud, Pringle must allege (a) that the transactions were done without reasonable equivalent value and (b) that the debtors that went into bankruptcy were either insolvent or the transactions led to their insolvency.

In the Second Amended Complaint, Pringle alleges that the transfers were completed without reasonable equivalent value. See Paragraph 143 of the Second Amended Complaint. Pringle further alleges such transfers by the Garcias, KKK, LLC and KRE, LLC were done while they were either insolvent or became insolvent as a result of the transactions. See Paragraph 144 of the Second Amended Complaint. Moreover, Paragraphs 144, 143, and 142 must be read in the context of all the preceding paragraphs in the Second Amended Complaint, which were outlined above as demonstrating particular facts relating to the transfer of assets aimed at

diverting assets away from Pringle and other Creditors of Sergio Garcia and his related bankrupt entities. The basics of a fraudulent transfer action has been plead against these moving Defendants.

## Conclusion

Sergio's Entities were involved in a fraudulent scheme aimed at obtaining over $6,000,000.00 from Pringle and others through fraudulent "loan transactions." All Defendants participated in a fraudulent shell game aimed at diverting assets that could be used to pay back Pringle. Each defendant played a different role as set forth in the Second Amended Complaint. The Second Amended Complaint outlines sufficient facts in compliance with the pleading requirements for Civil RICO and Indiana fraudulent transfer claims.

WHEREFORE, Pringle, by counsel, respectfully requests that this Court deny the motion to dismiss filed by Sergio Garcia II, Elva Garcia, Hector Rodriguez, Jose Barajas, Graciela Barajas, Steemmm Real Estate LLC, Alpha & Omega Real Estate LLC, REO Outlet LLC, Jesse's Construction LLC and IHB Real Estate LLC, and for all other just and appropriate relief.

Respectfully submitted,
KORANSKY, BOUWER & PORACKY, P.C.
BY:            /s/ James M. Yannakopoulos
JAMES M. YANNAKOPOULOS (#25164-45)
425 Joliet Street, Suite 425
Dyer, Indiana 46311
(219) 865-6700

## CERTIFICATE OF SERVICE

I certify that on the 29th day of August, 2011 service of a true and correct copy of the above and foregoing pleading was made upon each party or attorney of record either via email notification or depositing in envelopes properly addressed to each of them and with sufficient first class postage affixed.

KORANSKY, BOUWER & PORACKY, P.C.
/s/ James M. Yannakopoulos