UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ARTHUR PRINGLE III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:09-CV-22  PPS |
| | ) | |
| MARISA GARCIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Arthur Pringle invested millions of dollars in real estate deals with Defendant Sergio Garcia, but he hasn't been repaid a dime.  Pringle claims he's the victim of a fraud scheme.  He initially brought suit against Sergio Garcia, his wife Marisa, and Garcia's business entities, but then, in his Second Amended Complaint, Pringle added several Defendants.  Among them are Sergio Garcia II, Elva Garcia, Tomasa Garcia, Hector Rodriguez, Jose Barajas, Graciela Barajas, Steemmm Real Estate LLC, Alpha & Omega Real Estate LLC, REO Outlet LLC, Jesse's Construction LLC, and IHB Real Estate LLC (collectively "the Garcia II Defendants").  The nub of the case is Pringle's claim that Garcia operated a Ponzi scheme and then furthered the fraud by transferring vast sums of money and property to his kids and to others prior to filing bankruptcy and thereby making himself judgment proof against Pringle's claims.  The Garcia II Defendants seek dismissal of the claims against them. (DE 72.)  They also ask that I strike Exhibit MM to the Second Amended Complaint. (DE 74.)  For the following reasons, I'm granting both motions but will give Pringle leave to file an amended complaint.

### Background

Sergio Garcia operated his real estate business through several entities.  He purchased,

renovated, and sold or leased residential properties throughout Northwest Indiana, and he sought investors to fund these projects. Pringle was one of those investors. Between September 2006 and May 2008, Pringle made thirteen commercial loans to two of Garcia's entities, Kerusso Konstruction and Rehab Lending Tree. As of January 31, 2009, the principal amount of Pringle's loans was more than $5 million.

Garcia failed to repay Pringle, and Pringle alleges that Garcia has done the same to numerous other investors. According to Pringle, Garcia carried out his scheme by collecting money from investors, and then using some of the money on personal items, giving some to his children and relatives, purchasing real estate with some, and making some payments back to investors to keep them at bay – Charles Ponzi style. (DE 60 ¶ 42.) Then, when investors caught up to him, Garcia, Marisa, and Garcia's business entities fraudulently diverted funds to their friends and relatives, feigned destitution and filed for bankruptcy. When Pringle initially brought suit, he named Sergio and Marisa Garcia, Kerusso Konstruction Kompany LLC, Kerusso Real Estate LLC, Rehab Lending Tree LLC, Kerusso Real Estate, and Kerusso Asset Management LLC as defendants. After this case was stayed because of the bankruptcy, Pringle was permitted to file a Second Amended Complaint, adding the Garcia II Defendants and others.

The Second Amended Complaint alleges a RICO violation arising from Sergio Garcia's scheme to defraud Pringle and other investors, and that an Indiana Fraudulent Transfers Act claim arises from conveyances from Sergio, Marisa, Kerusso Konstruction, and Kerusso Real Estate to the Garcia II Defendants immediately prior to the bankruptcy filings. Pringle attached numerous exhibits to his complaint, including a chart labeled Exhibit MM which was prepared by Pringle's counsel. The exhibit purports to detail the acquisition and disposition of various

pieces of property, but is frankly more confusing than it is elucidating.  The Garcia II Defendants all join in the motion to dismiss as well as the motion to strike Exhibit MM.  I held a hearing on these motions, and this Opinion resolves these motions.

## Discussion

First I'll address the Motion to Strike Exhibit MM.  The motion relies on Federal Rules of Civil Procedure 12(f) and 10(c).  Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Although motions to strike are not favored, they may be granted if they remove unnecessary clutter from a case and expedite matters.  *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  The court has discretion in deciding whether to grant the motion.  *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992).  Federal Rule of Civil Procedure 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

Exhibit MM is an eighteen page chart, and in a word, it's confusing.  The chart contains columns with the following headings: Property Address, Tax ID #, and Grantee.  But one of the columns doesn't have a heading, and throughout the chart's eighteen pages, it fluctuates between five and ten columns, and the information in the columns lacks an explanation.  It's unreadable, but what's more, Pringle conceded that Exhibit MM isn't a legal instrument.  In acknowledging that it's not a legal instrument, Pringle's counsel explained that Exhibit MM is a compilation of facts taken from numerous property maintenance reports from the Lake County Auditor's Office.  He stated that the chart was an attempt at a more straightforward illustration of the plethora of

real estate transactions related to the claims in the Second Amended Complaint.  He argued that the only alternative was actually submitting the reports as exhibits, which would create an overly burdensome complaint.  But there is another alternative.  The plaintiff could simply describe each transaction in numbered paragraphs and then attach a few exhibits for illustration.

I disagree that the chart – especially in its confusing form – is a more efficient approach to bringing allegations for all the transactions involved in this action.  The Motion to Strike Exhibit MM under Rule 12(f) is therefore granted, and the document will not be deemed incorporated into the rest of the pleadings under Rule 10(c).  If Pringle chooses to amend the Second Amended Complaint, he would be wise to described each transaction in a narrative in the body of the complaint.  This will then enable the defendants to answer the complaint by either admitting, denying or alleging a lack of knowledge as to each transaction.  But a confusing chart like Exhibit MM cannot be meaningfully answered by the defendants, and it won't suffice.

Now, turning to the Garcia II Defendants' Motion to Dismiss.  The minimum requirements for pleading a claim for relief are contained in Federal Rule of Civil Procedure 8.  That rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.  But to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007).  And although at this stage I must accept all allegations as true and draw all reasonable inferences in the complainant's favor, I don't need to accept threadbare legal conclusions supported by mere conclusory statements. *Iqbal*, 129 S.Ct. at 1949-50.

The Second Amended Complaint's RICO claim against the Garcia II Defendants faces a

more exacting pleading standard because it involves allegations of fraud.  And allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all allegations of fraud with particularity.  *Slaney v. The International Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001); *Kaye v. D'Amato*, 357 Fed. Appx. 706, 710 (7th Cir. 2009).  Pleading with particularity means specifying the time, place, and content of the alleged false representations, the method by which the statements were made.  *Id.*; *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992).

There are four elements to a valid RICO claim: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity.  *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).  The phrase "racketeering activity" includes acts of mail fraud (18 U.S.C. § 1341) and bankruptcy fraud (18 U.S.C. § 152).  *See* 18 U.S.C. §§ 1961(1)(B) and (D).  A pattern of racketeering activity requires at least two acts within a ten-year period.  *Id.* § 1961(5).

As noted above, because the racketeering activity alleged in this case involve claims of fraud, Pringle must allege the fraudulent conduct of the Garcia II Defendants with particularity.  For this reason alone, Pringle's RICO claim against the Garcia II Defendants isn't sufficient.[1]  The RICO allegations span from paragraph 41 to 136 of the Second Amended Complaint, but it fails to include specific facts as to each of the Garcia II Defendants' involvement in Garcia's

---

[1] There are a number of other problems with the RICO claim as it is currently pled, not the least of which is there are no allegations in the complaint as to what the enterprise is.  Is this an association in fact enterprise or something else?  A RICO complaint must identify the enterprise.  *Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 398 (7th Cir. 2009).  A plaintiff then has to "plead and prove that a defendant took some part in directing or conducting the alleged enterprise." *Id.* at 399 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).  None of these allegations can be found in the current version of the complaint.

scheme.  Several of the Garcia II Defendants receive little more than an introduction.  For example, Elva Garcia is described as Sergio and Marisa Garcia's daughter, a member of Kerusso Asset Management LLC, and a member of Rehab Lending Tree, LLC.  (DE 60 ¶¶. 5, 7, 65(d).)  She is later identified as a principal of Alpha & Omega Real Estate LLC and IHB Real Estate LLC, and she's described as being a student or recent graduate during all times relevant to the claims.  (DE 60 ¶¶ 118, 119, 121, 123.)  Similarly, Sergio Garcia II is identified as Sergio and Marisa Garcia's son, and he's described as being "involved in assisting Alpha and Steemmm transferring properties" as a student or recent graduate during all relevant time periods.  (DE 60 ¶¶ 65(e)122, 123.)  Tomasa Garcia is listed as another daughter of Sergio and Marisa, but she's not mentioned again.  (DE 60 ¶ 65(f).)  Steemmm Real Estate LLC, Alpha & Omega Real Estate LLC, and IHB Real Estate LLC are described as companies involved in the scheme to divert properties from Pringle's reach.  (DE 60 ¶¶ 118-19, 121, 123.)  But the complaint doesn't include any real specifics as to their involvement; instead, it merely references the same Exhibit MM that was the subject of the motion to strike.  (DE 60 ¶ 124.)

     The allegations as to the above defendants are clearly deficient.  None of them provide any particularity as to how these defendants were involved in the alleged fraud.  What's more, as mentioned, the allegations rely on Exhibit MM, which is no longer part of the record.  Without any allegations as to these defendants' conduct, a RICO claim against them cannot proceed, so the claim against Elva Garcia, Sergio Garcia II, Tomasa Garcia, Steemmm Real Estate LLC, Alpha & Omega Real Estate LLC, and IHB Real Estate LLC is dismissed.

     There are a few defendants contained in the Garcia II bunch that are described in greater detail in the amended complaint, but the allegations don't reach a level of specificity sufficient to

state a RICO claim.  As to REO Outlet LLC, Pringle alleges that it participated in Garcia's conspiracy by defrauding the bankruptcy court.  The complaint states that REO Outlet collected a $5,000 deposit from Tracee Jackson as a part of the sale of property.  (DE 60 ¶¶ 78(c), 81, 84.)  When the sale fell through, REO Outlet didn't return the deposit to Jackson, and instead, it applied the $5,000 to rent she owed REO Outlet.  According to Pringle, the $5,000 should have been turned over to the bankruptcy court, and that Garcia conspired with REO Outlet to commit this fraud on the court.

These allegations are unacceptably vague and conclusory.  Pringle alleges no specific facts regarding an agreement between Garcia and REO Outlet.  Nor does he allege who exactly acting on REO Outlet's behalf made a misrepresentation, to whom it was made, when it was made and how it was relied upon.  In other words, the allegations at this point are pure guesswork.  This claim can't go forward without further information.

Hector Rodriguez is another Garcia II Defendant that the complaint gives a bit more attention.  He is described as the husband of Marisa Garcia's mother, and as a "straw person" in the conveyance of property located at 930 Mohawk.  (DE 60 ¶¶ 65(c), 53(n), 53(q).)  As a part of the conveyance of property located at 930 Mohawk, Crown Point, Indiana, Garcia allegedly conveyed the property to Rodriguez.  (DE 60 ¶ 53(n).)  Pringle alleges that Garcia conveyed this property twice before the first conveyance could be recorded, resulting in two lenders believing they had a mortgage on the property.  The allegations regarding this property certainly seem suspect, *as it relates to Garcia*, but without further allegations as to Rodriguez's knowledge, I don't see a claim sounding in fraud against Rodriguez in them.  Pringle doesn't describe any specific misrepresentations Rodriguez made, exactly how he participated in the property

7

conveyance, whether he was aware of the transactions, or whether Pringle relied upon Rodriguez's misrepresentation.  This is the type of detail that Rule 9(b) commands.  Without any particularized allegations regarding Rodriguez's involvement, the claim against him fails as well.

Finally, Jose Barajas and Graciela Barajas are named in a summary of the alleged racketeering activity.  (DE 60 ¶ 134.)  They're also described as principles of Jesse's Construction, but there aren't any specifics regarding any misrepresentations they, or Jesse's Construction, made.  Rather, Pringle alleges that the Garcias used Jesse's Construction as a way to cover up violations of the bankruptcy court orders.  (DE 60 ¶¶ 81-91.)  During the bankruptcy proceeding, the Garcias claimed that the rent they received from their properties were used to pay Jesse's Construction for repair work; Pringle alleges that Jesse's Construction didn't actually make any repairs, referencing testimony from the bankruptcy hearing.  (DE 60 ¶ 86.)

Although these allegations provide some information, they still don't state with particularity a fraud claim against Jose or Graciela Barajas, or Jesse's Construction.  Instead they are allegations concerning *Garcias'* conduct.  The allegations don't state how these three Garcia II Defendants were somehow in cahoots with the Garcias.  And they certainly don't allege that any of these three Garcia II Defendants made a misrepresentation, when that misrepresentation was made, the manner in which it was made, and whether it was relied upon.  Consequently, although these allegations come marginally closer to the pleading standard, they still fail.

The same problems lie in Pringle's Indiana Fraudulent Transfer Act ("IFTA") claim.  Under the IFTA:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

>   (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>   (A) was engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>   (B) intended to incur or believed or reasonably should have believed that the debtor would incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

Ind. Code. § 32-18-2-14.

Similar to the RICO claim, Pringle's claim against the Garcia II Defendants under the IFTA requires particularity. In a fraudulent conveyance case, a plaintiff must plead in detail the "'identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Richter v. Corporate Fin. Assoc., LLC*, No. 1:06-cv-1623, 2007 WL 1164649, at *1 (S.D. Ind. Apr. 19, 2007) (quoting *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *see Shi v. Yi*, 921 N.E.2d 31, 37, 38 (Ind. Ct. App. 2010).

No facts in the Second Amended Complaint tie the Garcia II Defendants to the fraudulent transfer claim. As described above, most of the individual Garcia II Defendants are simply mentioned as being involved with the companies allegedly involved in Garcia's scheme to defraud Pringle, and then not again individually. And the activities of the companies related to the alleged scheme rely on the transfers listed in Exhibit MM, which I've struck. Even if I had not stricken Exhibit MM, the complaint doesn't describe any misrepresentations made by any of the Garcia II Defendants, much less the time, place, or method by which they made misrepresentations. For the same reasons I've noted with respect to the RICO claim, the Indiana Fraudulent Transfer Act claims against the Garcia II Defendants are dismissed.

The Garcia II Defendants' Motion to Strike (DE 74) and Motion to Dismiss (DE 72) are

both **GRANTED,** and the claims against these defendants are **DISMISSED without prejudice**.

Consistent with Magistrate Judge Paul Cherry's order, Pringle has until February 24, 2012 to file an amended complaint.

**SO ORDERED.**

ENTERED: January 6, 2012

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
