UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ARTHUR D. PRINGLE III,          ) <br> ) <br> Plaintiff,         ) <br> ) <br> v         ) <br> ) <br> MARISA GARCIA; SERGIO E. GARCIA;         ) <br> KERUSSO KONSTRUCTION KOMPANY LLC;         ) <br> KERUSSO REAL ESTATE LLC;         ) <br> REHAB LENDING TREE, LLC;         ) <br> KERUSSO REAL ESTATE;         ) <br> KERUSSO ASSET MANAGEMENT LLC;         ) <br> ELVA GARCIA; MIGUEL GARCIA;         ) <br> CINDY LYONS A/K/A CINDY LYON;         ) <br> MANUEL GARCIA AKA MANNUEL GARCIA         ) <br> AKA MANNY GARCIA;         ) <br> REAL ESTATE EXPRESS, LLC; KRE, LLC;         ) <br> ALPHA & OMEGA; REAL ESTATE LLC;         ) <br> SOLUTION MANAGEMENT LLC;         ) <br> ARTEMTO CARRENO; JOE WITTIG;         ) <br> ALFREDO DEANDA; ELLIE DEANDA;         ) <br> REAL ESTATE EXPRESS, LLC; JAIME GARCIA; ) <br> AND DAVID GARCIA,         ) <br> ) <br> Defendants.         ) | CAUSE NO: 2:09-CV-022RM |

### DEFENDANTS' BRIEF IN SUPPORT OF
### MOTION TO DISMISS THIRD AMENDED COMPLAINT

Come now the Defendants, Sergio E. Garcia, Marisa Garcia, Kerusso Konstruction Kompany, LLC, Kerusso Real Estate, LLC, Kerusso Asset Management, LLC, Rehab Lending Tree, LLC, and Kerusso Real Estate ("Defendants"), by and through their attorneys Gordon E. Gouveia and Catherine Molnar-Boncela, Gouveia & Associates, LLC, and respectfully file their Memorandum of Law in Support of their Motion to Dismiss Counts

1

IV, V, VI and VII of the Third Amended Complaint filed on February 24, 2012 by Arthur D. Pringle, III ("Plaintiff") for failure to state a claim upon which relief could be granted.

**Summary of Third Amended Complaint**

On February 24, 2012, the Plaintiff filed and served his Third Amended Complaint ("Complaint"). The Complaint contained seven (7) counts in 220 legal paragraphs with additional subparagraphs. The first count sought relief for a debt due and owing which was allegedly guaranteed by the Defendants for an amount exceeding four and a half million dollars ($4,500,000.00). The second count seeks replevin and the foreclosure of a security interest. The third count seeks the appointment of a receiver to take possession of the assets of the Defendants. Count four seeks relief under the Indiana Fraudulent Transfers Act and count five for criminal conversion. Count six seeks to establish the existence of a civil claim pursuant to the Federal Civil Racketeer Influenced and Corrupt Organizations Act and Count seven seeks relief under the Indiana Civil Racketeer Influenced and Corrupt Organizations Act.

**Statement of the Case**

The Defendants include individuals and businesses that were heavily invested in the real estate market in Northwest Indiana. In order to improve their position in the real estate market, the Defendants began doing business with the Plaintiff. The Plaintiff was a sophisticated investor who sought to increase his rate of return over that available from more traditional investments. The Plaintiff did not take mortgages on the property purchased by the Defendants, but elected to take a security interest in collateral whose value as security had no relationship to the investments made by the Defendants in real estate or the size of the loans made by the Plaintiff to the Defendants.

The Plaintiff charged exorbitant interest rates and received returns that exceeded the returns that he could have obtained from more stable investments such as mortgages or bonds. The essentially unsecured loans to the Defendants carried an investment risk that exceeded that of a federally secured banking deposit and the interest rate charged the Defendants by the Plaintiff reflected that risk.

This business relationship benefitted all parties until the downfall of the real estate market in Northwest Indiana between 2007 and 2008. During this time period, significant economic contraction occurred which reduced cash flow to businesses invested in the real estate market and businesses were forced to arrange economic alternatives to their investments or suffer severe financial consequences. The Defendants did business with the Plaintiff in an attempt to generate cash flow that would outlast the economic consequences of the resulting global recession.

This case involves a simple commercial transaction between the parties. The loss occasioned by the default in the performance of the contractual obligations and the resulting damages were the direct result of the reduction in value of the Defendants' investment portfolio. Unemployment and reduced real estate values created the economic climate in which the Plaintiff's allegations are placed in context.

**Legal Standard for Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"" *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). *Iqbal*, 129 S. Ct. at 1949. "[A]t some point, the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 Fl.3d 614, 619 (7th Cir. 2007) (citing *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)) (internal quotations omitted).

A party moving to dismiss bears a weighty burden, for "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). The court addressing a Rule 12(b)(6) motion treats all well-pleaded factual allegations as true and construes all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant. *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003); *Szumny v. Am. Gen. Fin.*, 246 F.3d 1065, 1067 (7th Cir. 2001).

This court should endeavor to separate the labels assigned by the Plaintiff to the various allegations from the legal inferences that should result from the allegations. Although the court is required to accept all factual allegations as true and make all reasonable inferences from the Plaintiff's allegations, the court should hold the Plaintiff to the standard required by Fed. R. Civ. P. 12(b)(6) and the heightened pleading standard in Rule 9(b) in considering whether the Plaintiff's Complaint meets the appropriate legal standard.

4

On the other hand, a federal court is not obligated to state a Plaintiff's case by sifting through a lengthy complaint to extract the meritorious sections when an attorney has confused the issues and alleged irrelevant allegations in an attempt to take a "kitchen sink" approach to pleading. *Stanard v. Nygren*, 648 F.3d 792, 798-800 (7th Cir. 2011). Judges and adverse parties should not be required to "fish a gold coin from a bucket of mud." *Id.*, at 798. It is in the context of these observations that the Plaintiff's Third Amended Complaint should be considered.

**Argument**

  I.  **Count IV Indiana Fraudulent Transfers Act [I.C. 32-18-2-14]**

The two sections of the Indiana Uniform Fraudulent Transfer Act (the "Act") Pringle alleges in Count IV that all Defendants violated, state, in part:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

Ind. Code 32-18-2-14. The next Section provides:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if:
>
> (1) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
>
> (2) the debtor:
>
> > (A) was insolvent at that time; or
> >
> > (B) became insolvent as a result of the transfer or obligation.

Ind. Code § 32-18-2-15.

To determine the sufficiency of Pringle's factual allegations under the Indiana Fraudulent Transfers Act regarding Count IV, the Court must apply the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a fraud plaintiff to plead in detail the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Richter v. Corp. Fin. Assocs., LLC*, 2007 WL 1164649, at *1 (S.D. Ind. Apr.19, 2007) (citing *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir.2006)). *See also Shi v. Yi*, 921 N.E.2d 31, 37 (Ind. App. 2010) (discussing specificity requirement under Indiana Trial Rule 9(B) for claim under Indiana's Fraudulent Transfer Act and affirming dismissal for lack of specific pleading).

The Indiana Court of Appeals opinion in *Shi v. Yi* discusses two key applicable points: *who* is liable under the Indiana Uniform Fraudulent Transfer Act ("IUFTA"), and the legal sufficiency required for pleading a cause of action under IUFTA. *Shi* explains that the IUFTA "represents the most recent version of Indiana statutes dating back to the nineteenth century

which were passed to protect creditors' claims from attempts by debtors to escape payment on those claims by rendering oneself insolvent." *Id.* at 35. The Court of Appeals instructs: "[U]nder the IUFTA, a debtor is one who is liable on the claim." Ind. Code 32-18-2-6. . . . Thus, a creditor may bring a cause of action under Ind. Code § 32-18-2-153 only against a party who is "liable on the underlying right to payment." *Id.* at 36. The appellate opinion explains that, as to one of the alleged defendants, the plaintiff did not demonstrate that the defendant may be considered a "debtor" for IUFTA purposes, and, consequently, that defendant "is an improper party for a suit under IUFTA." *Id.* at 37. In addition to the debtor as defendant, *Shi* explores the use of the term "debtor" as the targeted defendant under the IUFTA is identical in both § 32-18-2-15 and § 32-18-2-14, indicating that only the debtor can be liable under both sections of the Act. The "fraudulent grantee doctrine", whereby "a grantee of property conveyed by a debtor to defraud creditors is liable for the value of the property conveyed to him if he actively participates in the fraud, and subsequently disposes of the property." *Id.* at 38 (citing and quoting ***Doherty v. Holiday***, 137 Ind. 282, 286, 32 N.E. 315, 317 (Ind. 1892)). However, the court concluded that the *Shi* plaintiff failed to adequately plead that the non-debtor defendants made any misrepresentation or that the plaintiff relied upon any misrepresentations, affirming dismissal of the IUFTA count. *Id.* at 38-39.

The Third Amended Complaint fails to establish that there was inadequate consideration provided for the alleged transfers or that the transfers met the requirements of the statute.

**II.     Count V Criminal Conversion [I.C. 34-24-3-1]**

The Indiana Criminal Conversion statute requires a finding that the defendant knowingly converted property belonging to the Plaintiff. I.C. 34-34-3-1. However, the allegations of the

Third Amended Complaint do not demonstrate the theft of property belonging to the Plaintiff. A failed commercial transaction does not imply the existence of a criminal conversion or the existence of a Ponzi scheme. The allegations provide notice of nothing more than a commercial transaction with an unfavorable outcome to the Plaintiff at a time when economic difficulties and loan defaults were rather common in the Northwest Indiana real estate market. Count V of the Plaintiff's Third Amended Complaint should be dismissed for failure to state a claim upon which relief could be granted.

III. **Count VI Federal RICO claim [18 U.S.C. §1961]**

Congress enacted RICO to target long-term criminal activity, not as a means of resolving commercial disputes. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019-1022 (7th Cir. 1992). "Not all questionable conduct is a 'scheme or artifice to defraud'." *Reynolds v. East Dyer Dey*, 882 F.2d 1249, 1252 (7th Cir. 1989).

A RICO claim is a windfall to the successful civil plaintiff in that treble damages and attorneys fees make the remedy very attractive in light of a contractual dispute that already may allow for attorneys fees to the successful party. However, the courts are hesitant to expand the application of RICO to business disputes. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025–26 (7th Cir.1992) ("civil RICO plaintiffs persist in trying to fit a square peg in [to] a round hole by squeezing garden-variety business disputes into civil RICO actions.... RICO has not federalized every state common-law cause of action available to remedy business deals gone sour"). RICO was intended to remedy organized crime, not make whole a civil plaintiff. *See Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1143-44 (5th Cir.1989). A RICO claim is a unique cause of action that does not concern all instances of wrongdoing, but focuses

on the limited purpose of "eradicating organized, long-term habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).

To state a valid RICO claim, a plaintiff must prove four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). "Racketeering activity" as alleged in this matter means "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title [18 U.S.C. 157] ) . . . ." 18 U.S.C. § 1961(1)(B) & (D). A "pattern of racketeering activity" requires at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). Establishing a pattern also requires a showing that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

Dismissal of a RICO claim is appropriate if the plaintiff fails to allege sufficient facts to state a claim that is plausible on its face, but the adequate number of facts varies depending on the complexity of the case. *Limestone Dev. Corp. v. Vill. Of Lemont, IL*, 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Twombley*, 550 U.S. 544). "Allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all allegations of fraud with particularity." *Kaye v. D'Amato*, 357 Fed. Appx. 706, 710 (7th Cir. 2009). This requires specifying the time, place, and content of the alleged fraudulent communication. *Id.*; *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (stating that "loose references to mailings and telephone calls in

9

furtherance of a purported scheme to defraud will not do" and "[i]nstead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications")(internal quotations omitted); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) ("[T]he complaint must, at minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud.").

Even prior to *Twombly* and *Iqbal*, the requirement for RICO claims to be pleaded with particularity applies to allegations of mail and wire fraud as alleged here:

> [A]t the least, a plaintiff pleading fraud must "specify the time, place and contents of any alleged false representations, and the full nature of the transaction." . . . This should include the identity of the person making the misrepresentations, and how the misrepresentations were communicated to the plaintiff. . . . The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are "lumped together" and in which no defendant can determine from the complaint which of the alleged misrepresentations it is specifically charged with having made, nor the identity of the individual by whom and to who the statements were given, nor the situs and circumstances of the conversation, nor . . . the date of the utterance.

*McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F. Supp. 927, 930-31 (N.D. Ill 1985) (internal citations omitted). *See, e.g., Oberoi v. Mehta*, 2011 WL 1337107, *3 (N.D. Ill., April 6, 2011)(discussing plaintiff's contention that specific defendants made false representations over the phone or mailed falsified loan applications, yet finding that the allegations do not amount to a RICO violation.)

As to the first element of a RICO claim in particular, conduct, Pringle has failed to plead with specificity the fraudulent conduct of the defendants here. *See, e.g., U.S. ex rel Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005) ("[F]ailure to honor one's promise

is just breach of contract, but making a promise that one *intends* not to keep is fraud") (emphasis in original). See also *Kaye*, 357 Fed. Appx. at 714 (finding that the plaintiff failed to allege facts including who, what, when, where, and how, for each of his allegations).

Rather than plead the alleged fraudulent conduct or any pattern of racketeering activity with particularity, Pringle alleges in his Third Amended Complaint precisely what the *McKee* court holds a plaintiff cannot do — "lumping together" multiple defendants without identifying which person made which, if any, misrepresentations or communications. Several of the defendants are merely mentioned and identified by relation to Sergio Garcia (the "who"), but have no further facts alleged regarding the what, when, where, and how they participated in any fraudulent activities. With the pleading standards required under *Twombly* and *Iqbal*, in addition to the heightened pleading requirements of particularity for claims of fraud, the sweeping, non-specific allegations such as in this Third Amended Complaint do not satisfy that which is required to withstand a motion to dismiss and are like those regularly dismissed by district courts or the dismissals upheld by the Seventh Circuit. See, e.g., *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399-400 (7th Cir. 2009) (affirming dismissal of RICO claim where plaintiff failed to adequately plead both directing or conducting the enterprise and association-in-fact); *Kaye*, 357 Fed. Appx. at 714-15 (affirming dismissal for failure to adequately plead fraud claim); *Bachewicz v. Preferred Development*, 2011 WL 2560218, *6 (N.D. Ill. June 28, 2011) (dismissing RICO claim for failure to plead with particularity); *Perfect Flowers v. Teleflora LLC*, 2011 WL 2462224, *4 (S.D. Ind. June 17, 2011) (dismissing RICO claim for failure to properly plead the underlying predicate act under Rule 9(b) as well as failing to plead with specificity that defendant engaged in conduct continuously or that there was a threat of

future conduct); *Oberoi*, 2011 WL 1337107 at *4 (granting defendants' motion to dismiss for failure to demonstrate an enterprise through proof of an ongoing association and failure to demonstrate defendants shared in the profits of the alleged enterprise). Thus, Pringle's RICO claim should be dismissed as to the Defendants.

**Proximate Cause**

Further, the Plaintiff must allege that the predicate offense not only was a "but for" cause of his injury, but was the proximate cause as well; this means that the link between the alleged RICO conspiracy and the plaintiff's injury must not be "too remote," or "purely contingent," or "indirect." 18 U.S.C.A. § 1961 et seq. The Supreme Court has said that when evaluating proximate causation under RICO, "the central question .. is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461, 126 S. Ct. 1991, 164 L. Ed.2d 720 (2006). A RICO plaintiff must show that the predicate offense "not only was a but for cause of his injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York*, ___ U.S. ___, 130 S. Ct. 983, 989, 175 L. Ed. 2d 943 (2010) (quotation marks omitted). What this means is that the link between the alleged RICO conspiracy and the plaintiff's injury must not be "too remote," or "purely contingent," or "indirec[t]." Id. (citation omitted).

In examining whether a RICO violation proximately caused the plaintiff's injury, the central question is whether the alleged violation led directly to the plaintiff's injuries. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992). The typical question asked in determining cause-in-fact is counterfactual: would the

claimed injury still have happened if the defendant had not engaged in the tortious conduct alleged?

In this case, the Plaintiff cannot establish any relationship between his alleged injury and the alleged offenses. Therefore, the Plaintiff cannot allege the existence of a RICO claim against the Defendants.

### IV.  Count VII Indiana Civil Rico [I.C. 35-45-6-1(c)(2)]

Initially, the Defendants note that Indiana RICO is patterned after federal RICO and thus the analysis of Count VII mirrors Count VI. *See State v. Allen*, 646 N.E.2d 965 (Ind. App.1995) (noting that state RICO is patterned after federal RICO statute), trans. denied; *Mendenhall v. Goldsmith*, 59 F.3d 685 (7th Cir.1995), *cert. denied,* 516 U.S. 1011, 116 S. Ct. 568, 133 L. Ed. 2d 492 ("Under Indiana law, Indiana Civil Remedies for Racketeering Activity and Racketeer Influenced and Corrupt Organizations Acts were patterned after the federal anti-racketeering laws, which were designed to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots."). The Plaintiff alleges that the Defendants violated I.C. § 35-45-6-1 et seq. Inherent with the similarities between the Federal and Indiana RICO statutes is the importance of proximate cause and requirement that there be a nexus between the injury complained of and the allegations of wrongdoing. The allegations in the Plaintiff's Complaint fail to meet this standard in light of the commercial nature of the transactions and the essentially unsecured nature of the alleged loans. Therefore Count VII should be dismissed for failure to state a claim upon which relief could be granted.

**Conclusion**

Because the plaintiff has failed to sufficiently plead plausible claims and has failed to allege with particularity as required by Rule 9(b), Counts IV, V, VI and VII of the Third Amended Complaint should be dismissed.

Respectfully submitted:

GOUVEIA & ASSOCIATES

/s/ Gordon E. Gouveia
Gordon E. Gouveia #7235-45
Catherine Molnar-Boncela, #9996-45
Gouveia & Associates
433 W. 84th Drive
Merrillville, IN 46410
Telephone: (219) 736-6020
Email: gm6020@aol.com
Attorney for Defendants

### CERTIFICATE OF SERVICE

I certify that on this 30th day of March, 2012, I served a trust and complete copy of the above and foregoing instrument, via electronic mail and first class mail upon the following:

Greg A Bouwer , GBouwer@kblegal.net
James M Yannakopoulos, Email: jyannako@kblegal.net
Peter G Koransky Koransky & Bouwer PC 425 Joliet Street Suite 425 Dyer , IN 46311
David M Blaskovich, dmblasko@cwblawfirm.com
Anne M Coatsolonia, acoatsolonia@wbbklaw.com
John Edward Hughes, jhughes@hwelaw.com
Kimberly Patricia Peil, kpeil@hwelaw.com
Paul B Poracky, Pporacky@KBLegal.net

/s/ Gordon E. Gouveia
Gordon E. Gouveia