## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| ARTHUR D. PRINGLE III | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 2:09-CV-022-PPS-PRC |
| | ) | |
| MARISA GARCIA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## DEFENDANTS, ELVA GARCIA AND ALPHA & OMEGA REAL ESTATE LLC

Defendants, Elva Garcia and Alpha & Omega Real Estate LLC (the two remaining Garcia II defendants, hereinafter collectively "the Garcia II Defendants"), by their attorneys Anne M. Coatsolonia and David M. Blaskovich of Woodward, Buls, Blaskovich & King, LLP, move pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the plaintiff's Second Amended Complaint because it fails to state a claim upon which relief can be granted as to these Defendants.  In support of this Motion, Defendants state as follows:

### Factual Background

On February 24, 2012, Arthur D. Pringle III ("Pringle"), filed his Third Amended Complaint in this cause of action, which named as defendants only two of the original eleven "Garcia II Defendants" that were represented by undersigned counsel after the filing of Pringle's Second Amended Complaint in this matter, Elva Garcia ("Elva"), and Alpha & Omega Real Estate LLC, ("Alpha & Omega").[1]  Counts IV, VI and VII of this Third Amended Complaint

---

[1] Although the Third Amended Complaint was filed on CM/ECF on February 24, 2012, Pringle failed to serve it on counsel for the Garcia II Defendants.  Because the Garcia II Defendants' Motion to Dismiss the Second Amended Complaint was granted, they were terminated as parties on CM/ECF and did not receive electronic service.

include claims against these remaining Garcia II Defendants filing this Motion to Dismiss: Count IV is a claim under Indiana's Fraudulent Transfers Act, Indiana Code §§ 32-18-2-14 and 32-18-2-15; Count VI is a federal Civil RICO claim under 18 U.S.C. § 1961 et seq.; and Count VII is a claim under Indiana's Civil RICO statute, Indiana Code § 34-24-2-6(b).

Like Pringle's Second Amended Complaint, the Third Amended Complaint is predominantly comprised of factual allegations about the original set of debtor defendants from the plaintiff's Complaint defined as the "Garcias" (Sergio E. and Marisa Garcia) and the "Garcia Entities" (Kerusso Real Estate, Kerusso Konstruction, Kerusso Asset Management, LLC, and Rehab Lending Tree, LLC). Elva and Alpha & Omega are present in only a few of the allegations pleaded:

- Elva Garcia is introduced as the daughter of Sergio and Marisa Garcia and a member of the "Garcia Family" in Paragraph 81(D) on page 42 of the complaint, then identified in Paragraph 116(B), page 50, (which is repeated verbatim in Paragraph 214(B), page 90) as a principal of Alpha & Omega Real Estate LLC. Elva is named only 4 more times in the voluminous pleading: twice in the "WHEREFORE"/ prayer requests for Counts VI and VII, and twice as a named defendant in the allegations of Count VI:

    Defendants, . . . Alpha & Omega Real Estate LLC; Elva Garcia . . . are subject to 11 U.S.C. § 1962(d) in that they knowingly and intentionally conspired with Sergio [Garcia Sr.] and other members of the Garcia Family to defraud Pringle and other creditors of the Garcia Entities as outlined above.

  (See Pl.'s Third Amd. Compl., ¶ 190, p. 84), and

---

Likewise, although the certificate of service on the Third Amended Complaint lists email addresses for undersigned counsel, Pringle did not email the pleading. The Third Amended Complaint was served by common carrier (UPS Ground), delivery to the carrier being on March 22, 2012. Pursuant to FRCP 15(a)(3), the response must be made within 14 days after service of the amended pleading, with three days additional time after certain service per Rule 6(d) and Rule 5(b)(F) (which includes delivery by designated delivery agency such as a common carrier). Thus, the remaining Garcia II Defendants' response to the Third Amended Complaint must be made on or before April 9, 2012.

> Defendants, . . . Alpha & Omega Real Estate LLC; Elva Garcia . . . are subject to
> 11 U.S.C. § 1962(c) in that they knowingly and intentionally associated with and
> or were employed by Sergio and other members of the Garcia Family to defraud
> Pringle and other creditors of the Garcia Entities as outlined above.

(See Pl.'s Third Amd. Compl., ¶ 191, pp. 84-85). There are no other factual allegations in
Pringle's Second Amended Complaint regarding Elva's knowledge or actions. In fact, there
is not a single mention of her personally performing a single act nor making any
representation – not even providing her signature – anywhere in the 92 page pleading nor its
233 pages of exhibits.

- Alpha & Omega Real Estate LLC is identified in each of the instances identified above
regarding Elva as its Principal and the conclusory allegations that Alpha & Omega
knowingly and intentionally conspired, associated or were employed by Garcia Sr. or the
Garcia Family to defraud Pringle. In Count IV, Paragraph 46, Pringle's pleading lists
allegedly fraudulent transfers, and includes in Subparagraphs (Q)-(WW) numerous transfers
of property from what Plaintiff dubs "Garcia Debtors" (comprised of the Garcias and the
Garcia Entities) *to* Alpha & Omega. (See Pl.'s Third Amd. Compl., ¶ 46(Q)-(WW), pp. 16-
21). However, not one transfer from Alpha & Omega is described in the Third Amended
Complaint. Each mention of Alpha & Omega in Count VI also specifically denotes Alpha &
Omega "as grantee" of properties alleged to have been transferred as part of the RICO fraud
scheme.

Defendants Elva Garcia and Alpha & Omega Real Estate LLC assert that the Third
Amended Complaint lacks sufficiently pleaded facts to maintain either a federal or state law
RICO claim or the pendant state law claim for fraudulent transfer.

3

## Legal Standard for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, - - - U.S. - - -, - - -, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6).  *Iqbal*, 129 S. Ct. at 1949.  "[A]t some point, the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 Fl.3d 614, 619 (7th Cir. 2007) (citing *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007))(internal quotations omitted).

A party moving to dismiss bears a weighty burden, for "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563 (citing *Sanjuan v. American Bde. Of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")).  The court addressing a Rule 12(b)(6) motion treats all well-pleaded factual allegations as true and construes all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant.  *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003); *Szumny v. Am. Gen. Fin.*, 246 F.3d 1065, 1067 (7th Cir. 2001).

4

## **Argument**

I.    Count IV Alleging Violation of the Fraudulent Transfers Act Fails to State a Claim
      against Elva Garcia and Alpha & Omega Real Estate LLC

To begin, Count IV states in its introduction that it is asserted "against the Defendants,"
presumably this includes all named Defendants, although the content of the Count's allegations
does not appear to support this conclusion.  Count IV incorporates the previous forty paragraphs
of the pleading, details a long list of property transfers made by Sergio E. Garcia, Marisa Garcia,
Kerusso Real Estate and Kerusso Konstruction (defined as the "Garcia Debtors") to various other
persons and entities, including Alpha & Omega, as recited above.  The prayer for relief at the end
of Count IV asks for the avoidance of all allegedly fraudulent transfers, an injunction against any
further disposition of the income and assets from the allegedly fraudulent transfers, an execution
against all allegedly fraudulently transferred assets, a declaratory judgment "as to the grantors
and grantees identified in paragraph 46" deeming them fraudulent under the IUFTA, and all
other proper relief.  The only possible implication of the remaining Garcia II defendants in this
Count is as "grantees."

As a preliminary matter, Elva's name is completely absent from the Factual Background
and Counts I-V, the first 40 pages in total, of the Third Amended Complaint.  Even without the
heightened pleading standards for fraud discussed below, Elva is not named or identified in any
way or by any act alleged until the averments of Count VI on page 42 of the Complaint and,
therefore, cannot be subject to the Fraudulent Transfer claim stated in Count IV.  Without further
argument, the Court should dismiss Count IV as to Elva Garcia because of the total absence of
her name in the Complaint until Count VI.

The two sections of the Indiana Uniform Fraudulent Transfer Act (the "Act") Pringle
alleges in Count V that all defendants violated, state, in part:

A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

 (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

 (B) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.

Ind.Code § 32-18-2-14.  The next Section provides:

 A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if:

(1) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and

(2) the debtor:

 (A) was insolvent at that time; or

 (B) became insolvent as a result of the transfer or obligation.

Ind. Code § 32-18-2-15.

To determine the sufficiency of Pringle's factual allegations under the Indiana Fraudulent Transfers Act regarding Count V, the Court must again apply the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a fraud plaintiff to plead in detail the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." ***Richter v. Corp. Fin. Assocs., LLC***, 2007 WL 1164649, at *1 (S.D.Ind. Apr.19, 2007)

(citing *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir.2006)). *See also Shi v. Yi*, 921 N.E.2d 31, 37 (Ind. Ct. App. 2010) (discussing specificity requirement under Indiana Trial Rule 9(B) for claim under Indiana's Fraudulent Transfer Act and affirming dismissal for lack of specific pleading).

Alpha & Omega reiterates and incorporates the argument in its previous Motion to Dismiss that only a debtor is liable under the IFTA.  *See Shi*, 921 N.E.2d at 36 (discussing that creditors may only bring claims under the IFTA against those who are liable on the underlying right to payment).  *Shi* also explores the "fraudulent grantee doctrine", whereby "a grantee of property conveyed by a debtor to defraud creditors is liable for the value of the property conveyed to him *if he actively participates in the fraud, and subsequently disposes of the property*." *Id.* at 38 (emphasis added).  This doctrine confirms the application of heightened pleading standards for Count IV against the Garcia II Defendants, even where the party is allegedly only a grantee.  As this Court determined in its Opinion and Order dismissing this same claim as to both Elva and Alpha & Omega, as well as several other alleged grantees, as grantees there is no liability shown under this heightened standard.

As stated in this Court's Opinion and Order of January 6, 2012, Pringle's pleading must include in any fraudulent conveyance claim the "identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  (See DE 97, p. 9).  Here, just as this Court noted of his Second Amended Complaint, Pringle has failed to include specific facts necessary to put forth a plausible claim for fraud against Elva and Alpha & Omega.  As explained, no specific action or misrepresentation of Elva is identified anywhere in the pleading.[2]

---

[2] Pringle's sole allegation against Elva is that she is a principal of Alpha & Omega.  Because this is the only factual assertion regarding Elva, it appears that Pringle is attempting to ignore the corporate structure to assess liability

As for Alpha & Omega, the entirety of allegations are that it is a grantee - for example, Count IV, Paragraph 46, subparagraphs Q-WW detail 33 instances where property was deeded *to* Alpha & Omega, but the simple mechanics of deeding property only require the signature of the *grantor*. *See, e.g.,* Pl.'s Third Amd. Compl., Ex. CC [DE 98-15, pp. 2, 4-5] (attached to Pringle's pleading and providing an example illustrating that the transfer of property deed does not involve any overt act *by the grantee*). The IFTA by its language may allow allegations against only the debtor or allegations of specific fraudulent acts against anyone accused of being a fraudulent grantee. Pringle has again failed to do this.

Pringle's claim under the Indiana Fraudulent Transfers Act fails to allege with particularity any facts as to the two remaining Garcia II defendants' individual participation in any transfers. Count IV is not pleaded with the specificity required to merit moving forward against either Elva or Alpha & Omega, and the Court should dismiss this claim as to both parties.

II.      Count VI Alleging Violation of the Federal Civil RICO Act Fails to State a Claim against
         Elva Garcia and Alpha & Omega Real Estate LLC

To state a valid RICO claim, a plaintiff must prove four elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. ***Gamboa v. Velez***, 457 F.3d 703, 705 (7th Cir. 2006). "Racketeering activity" as alleged in this matter means "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title [18 U.S.C. § 157]) . . . ." 18 U.S.C. § 1961(1)(B) &

---

against Elva for the allegations regarding Alpha & Omega. However, Indiana's statutes and case law do not allow personal liability for acts which may be attributable to a corporation except in the limited circumstances where the corporate veil is pierced. *See, e.g.,* ***Aronson v. Price***, 644 N.E.2d 864, 867 (Ind. 1994) (explaining the limitation of liability codified in the Indiana Business Corporation Law and the codified exception to that principle only where the party pierces the corporate veil after a corporation has been found liable). *See also* ***Community Care Centers, Inc. v. Hamilton***, 774 N.E.2d 559, 562-63 (Ind. Ct. App. 2002) (explaining that *after* the trial court granted and entered a final judgment against the corporation sued, the plaintiff filed a motion for summary judgment on the issue of whether the principals of the corporation should be personally liable for the payment of the restitution judgment entered against the corporation).

(D).   A "pattern of racketeering activity" requires at least two predicate acts within a ten-year period.   18 U.S.C. § 1961(5).   Establishing a pattern also requires a showing that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."   *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L.Ed.2d 195 (1989).

Dismissal of a RICO claim is appropriate if the plaintiff fails to allege sufficient facts to state a claim that is plausible on its face, but the adequate number of facts varies depending on the complexity of the case.   *Limestone Dev. Corp. v. Vill. Of Lemont, IL*, 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Twombley*, 550 U.S. 544).   "Allegations of fraud in a civil RICO claim are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all allegations of fraud with particularity."   *Kaye v. D'Amato*, 357 Fed. Appx. 706, 710 (7th Cir. 2009).   This requires specifying the time, place, and content of the alleged fraudulent communication.   *Id.*; *see also Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (stating that "loose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do" and "[i]nstead, the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications")(internal quotations omitted); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) ("[T]he complaint must, at minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud.").

Even prior to *Twombly* and *Iqbal*, the requirement for RICO claims to be pleaded with particularity applies to allegations of mail and wire fraud as alleged here:

> [A]t the least, a plaintiff pleading fraud must "specify the time, place and contents of any alleged false representations, and the full nature of the transaction."   . . .

This should include the identity of the person making the misrepresentations, and how the misrepresentations were communicated to the plaintiff. . . .   The identity of those making the misrepresentations is crucial.   Courts have been quick to reject pleadings in which multiple defendants are "lumped together" and in which no defendant can determine from the complaint which of the alleged misrepresentations it is specifically charged with having made, nor the identity of the individual by whom and to who the statements were given, nor the situs and circumstances of the conversation, nor . . . the date of the utterance.

*McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F. Supp. 927, 930-31 (N.D. Ill 1985) (internal citations omitted).  *See, e.g., Oberoi v. Mehta*, 2011 WL 1337107, *3 (N.D. Ill., April 6, 2011)(discussing plaintiff's contention that specific defendants made false representations over the phone or mailed falsified loan applications, yet finding that the allegations do not amount to a RICO violation.)

Although Pringle's Third Amended Complaint identifies the "Garcia Family" as an association-in-fact enterprise in Paragraphs 79-85, it simply lists the relationships of many entities and relatives without including any allegations that implicate these relatives and entities in any of the predicate acts or fraud claims specifically outlined in Count V, on which the pleading relies.   Again, casting a net to include relatives and related entities of a debtor is improper "lumping together".

Likewise, as to the first element of a RICO claim, conduct, Pringle has failed to plead with specificity the fraudulent conduct of the defendants here.  *See, e.g., U.S. ex rel Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005) ("[F]ailure to honor one's promise is just breach of contract, but making a promise that one *intends* not to keep is fraud")(emphasis in original).  *See also Kaye*, 357 Fed. Appx. at 714 (finding that the plaintiff failed to allege facts including who, what, when, where, and how, for each of his allegations).  The Third Amended Complaint, like its predecessor, is void of specific factual allegations regarding the remaining

Garcia II Defendants.  Again, Pringle failed to describe the time, place, and content of the mail and wire communications made by Elva or Alpha and Omega as required.

Elva and  Alpha and Omega cannot be lumped together with the debtor defendants without identifying which made a misrepresentations or communications.  The pleading contains no further facts alleged regarding the what, when, where, and how they participated in any fraudulent activities.  With the pleading standards required under *Twombly* and *Iqbal,* in addition to the heightened pleading requirements of particularity for claims of fraud, the sweeping, non-specific allegations such as in this Third Amended Complaint do not satisfy that which is required to withstand a motion to dismiss and are like those regularly dismissed by district courts or the dismissals upheld by the Seventh Circuit.  *See, e.g., Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399-400 (7th Cir. 2009) (affirming dismissal of RICO claim where plaintiff failed to adequately plead both directing or conducting the enterprise and association-in-fact); *Kaye*, 357 Fed. Appx. at 714-15 (affirming dismissal for failure to adequately plead fraud claim); *Bachewicz v. Preferred Development*, 2011 WL 2560218, *6 (N.D. Ill. June 28, 2011) (dismissing RICO claim for failure to plead with particularity); *Perfect Flowers v. Teleflora LLC*, 2011 WL 2462224, *4 (S.D. Ind. June 17, 2011) (dismissing RICO claim for failure to properly plead the underlying predicate act under Rule 9(b) as well as failing to plead with specificity that defendant engaged in conduct continuously or that there was a threat of future conduct); *Oberoi*, 2011 WL 1337107 at *4 (granting defendants' motion to dismiss for failure to demonstrate an enterprise through proof of an ongoing association and failure to demonstrate defendants shared in the profits of the alleged enterprise).  Thus, Pringle's RICO claim should be dismissed as to the remaining Garcia II Defendants.

III.   Count VII Alleging Violation of Indiana's Civil RICO Act Fails to State a Claim Against Elva Garcia and Alpha & Omega Real Estate LLC

Pringle alleges in Count VII of his Third Amended Complaint that Elva and Alpha & Omega "knowingly and intentionally conducted and participated in the activities of the Garcia Family through a pattern of racketeering activity, under Ind. Code § 35-45-6-2(3)."  (See Third Amd. Compl. p. 91, ¶ 221.)  Indiana's Civil RICO statute states:

A person:
. . .

(3)    who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;

commits corrupt business influence, a Class C felony.

**Ind. Code § 35-45-6-2**.   Participating in a "pattern of racketeering activity" is defined as "engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents.  **Ind. Code § 35-45-6-1(d)**.   To engage in "[r]acketeering activity" is "to commit, to attempt to commit, to conspire to commit a violation of, or aiding and abetting in a violation" of one of a number of enumerated laws which including fraud under § 35-43-5-4.  **Ind. Code § 35-45-6-1(e)**.

Pringle identifies fraud as the underlying crime committed and enumerated under the racketeering definition.  "A person who . . . (8) with intent to defraud the person's creditor or purchaser, conceals, encumbers, or transfers property[,] . . . commits fraud, a Class D felony."  **Ind. Code 35-43-5-4**.

First, just as under the Indiana Fraudulent Transfers Act, Elva and Alpha & Omega cannot fit the definition of the crime alleged because the fraud statute alleged specifically references a "person . . . with intent to defraud the person's creditor or creditor" – making clear that it is the debtor himself that "conceals, encumbers, or tranfers property." *Id.*; *see also* ***Klinker v. First Merchants Bank, N.A.***, --- N.E.2d ----, 2012 WL 928134 * 2 (Ind. 2012) ("Effectively, this statute makes it a crime to execute a fraudulent conveyance with the specific intent to 'defraud' the person's creditors.").

The recently-decided ***Klinker*** case is instructive because it explains in great detail the elements that must be proven to grant summary judgment under the fraud statute alleged by Pringle.  2012 WL 9281134 at *2 ("Effectively, this statute makes it a crime to execute a fraudulent conveyance with the specific intent to 'defraud' the person's creditors.").  The discussion of the ***Klinker*** facts and their application to those elements demonstrate how inapplicable this statute is in prosecution of any party other than the debtor.  *Id.* ("Summary judgment for [the creditor] on this claim is proper only if the undisputed facts show that (1) Klinker[, the debtor,] (2) concealed, encumbered, or transferred property (3) with the specific intent to defraud [ ] his creditor.").  It was undisputed that the debtor had transferred financed vehicles without the creditor's knowledge "thereby concealing them from his creditor."  *Id.* "[B]ut this does not lead inescapably to a finding of criminal fraud."  *Id.* (collecting cases supporting same).  The Indiana Supreme Court goes on to explain that to be liable under the statute, the debtor must "act with the specific intent to defraud."  *Id.*

Here, as is proper for a motion to dismiss, the remaining Garcia II Defendants assert that the allegations of Count VII of engaging in conduct prohibited by Indiana Code § 35-43-5-4(8) fail to allege plausible claims against Elva and Alpha and Omega.  Elva and Alpha and Omega

13

are not debtors and there are no facts alleged with specificity as is required regarding any acts or specific intent by them.   Neither Elva nor Alpha and Omega is alleged to have executed any fraudulent conveyance.

Because the allegations of the Third Amended Complaint fail to allege any acts by Elva and Alpha and Omega under Indiana Code § 35-43-5-4(8) which can be the basis for the underlying acts under Indiana's Civil RICO statute, the Court should dismiss Count VII as to the remaining Garcia II Defendants.

IV.   <u>Proceedings Supplemental as the Proper Procedure</u>

During the hearing on the Garcia II Defendants' Motion to Dismiss the Second Amended Complaint, the over-arching argument presented by counsel was and remains that Pringle's attempt to collect any debts from any person or entity beyond his actual debtors is inappropriate at this time.  The appropriate legal mechanism for this matter is a proceeding supplemental under Federal Rule of Civil Procedure 69, which states:

> (1) A money judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

> (2) In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person— including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

Fed. R. Civ. P. 69(a).

Discovery under Rule 69(a) "permit[s] a judgment creditor to obtain discovery not only of the debtor's current assets, but also information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets." ***O.H.M Resource Recovery Corp. v. Industrial Fuels & Resources, Inc.***, 1991 WL 146234, *2 (N.D.

14

Ind. July 24, 2001) (collecting cases); see also *British International Insurance Company v. Seguros la Republica, S.A.*, 200 F.R.D. 586, 589 (W.D. Tex. 2000) (post-judgment discovery is broad in scope and its purpose is to uncover "information relevant to the existence or transfer of the judgment debtor's assets") (citations omitted); *Caisson Corp. v. County West Building Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974) (judgment creditors are permitted a broad inquiry in order to discover assets that may be hidden or concealed by the judgment debtor); *United States v. Neumann*, 1999 WL 156151, *1 (D. Mass. March 5, 1999) (quoting *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998)) ("'[T]he presumption should be in favor of full discovery of any matters arguably related to the [creditor's] efforts to trace [the debtor's] assets and otherwise to enforce its judgment' particularly where the relationship between the debtor and a third party 'is sufficient to raise a reasonable doubt about the bona fides of [any] transfer of assets between them.'").

Rule 69 allows the judgment creditor may use the full range of discovery devices outlined in the Federal Rules of Civil Procedure. *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 n.1 (S.D.N.Y. 1977) (citations omitted). However, the use of the discovery devices is subject to the separate requirements of the federal rules of discovery. 13 *Moore's Federal Practice – Civil* § 69.04 (2009) (citing *El Salto, S.A. v. PSG Co.*, 444 F.2d 477, 484 (9th Cir. 1971)). Thus, a judgment debtor can be required to respond to any relevant discovery requests concerning their assets and knowledge of assets of others. *National Union Fire Insurance Company of Pittsburgh, PA v. Van Wayernberghe*, 148 F.R.D. 256, 256-57 (N.D. Ind. 1993) (stating that it is "beyond question that a judgment creditor is allowed to ask a judgment debtor for asset and financial information relating to the debtor's spouse or other family members"); *O.H.M Resource Recovery Corp. v. Industrial Fuels & Resources, Inc.*, 1991 WL 146234, *3

(N.D. Ind. July 24, 1991) (permitting a judgment creditor to question judgment debtor about its relations with nonparty organizations, ownership of those entities, transactions with them, and information about their finances). While Rule 69(a) generally does not permit the discovery of a third party's assets, "discovery would be permitted where the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets." *Strick Corp. v. Thai Teak Products Co., Ltd.*, 493 F. Supp. at 1218 (citing *Magnaleasing Inc. v. State Island Mall*, 76 F.R.D. 559); *see also* 12 **Charles A. Wright &, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure** § 3014 ("probing questioning is allowed with regard to third parties with close ties to the judgment debtor").

While a judgment creditor may be entitled to question a third party in regards to its own and the judgment debtor's assets, "[t]here is authority for restricting discovery requests directed to third parties seeking information about their assets and financial affairs." *O.H.M Resource Recovery Corp. v. Industrial Fuels & Resources, Inc.*, 1991 WL 146234 at *3 (citing *Strick Corp. v. Thai Teak Products Co., Ltd.*, 493 F. Supp. at 1218 (E.D. Pa. 1980). Third parties' privacy interests should be protected. *Blaw Knox Corp. v. AMR Industries, Inc.*, 130 F.R.D. at 403. Courts must not allow post-judgment discovery "to become a means of harassment of . . . third persons." *Caisson Corp. v. County West Building Corp.*, 62 F.R.D. at 334; 13 *Moore's Federal Practice – Civil* § 69.04 (2009).

To summarize, Pringle's Third Amended Complaint, like those before it, alleges the rights of a creditor attempting to collect debts of the Garcia Debtors. Unless and until Pringle **obtains a judgment** against his debtors, any third parties who may have received transferred assets are improper defendants. If Pringle obtains a judgment, the Federal Rules, specifically, Rule 69, provide the means for him to conduct discovery regarding a judgment debtor. Based

upon the underlying creditor-debtor claim here, the dictates of Rule 69, and the fact that Elva and Alpha and Omega are presenting their second motion to dismiss in this matter making the same basic argument as before, they pray the Court dismiss these claims with prejudice to prevent any further attempts to improperly implicate them in this litigation.

### Conclusion

Because the Plaintiff has failed to sufficiently plead plausible claims and has failed to allege with particularity as required by Rule 9(b), and because it is improper for a creditor to extend his reach beyond his debtors until after he has a judgment and can proceed with execution of judgment under Rule 69, the Third Amended Complaint should be dismissed with prejudice as to the Defendants as argued herein.

WHEREFORE, Defendants, Elva Garcia and Alpha & Omega Real Estate LLC, pray the Court dismiss with prejudice the plaintiff's Third Amended Complaint, Counts IV, VI and VII, for failing to state a claim as to these Defendants, and for all other appropriate relief in the premises.

Respectfully submitted,

/s/Anne M. Coatsolonia
Anne M. Coatsolonia
Attorney No. 27719-64
David M. Blaskovich
Attorney No. 19757-45
9223 Broadway, Suite A
Merrillville, Indiana 46410
Tel. (219) 736-9990
acoatsolonia@wbbklaw.com
Woodward, Buls, Blaskovich & King, LLP
Attorneys for Defendants, Elva Garcia and Alpha &
Omega Real Estate LLC

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that the undersigned did, this day, electronically file the foregoing instrument with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Gordon E. Gouveia gm6020@aol.com
Greg A. Bouwer GBouwer@kblegal.net
John Edward Hughes jhughes@hwelaw.com

Dated this 6th day of April, 2012.

/s/ Anne M. Coatsolonia
Anne M. Coatsolonia