UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ARTHUR D. PRINGLE III, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:09-CV-22-PPS-PRC |
| | ) | |
| MARISA GARCIA, *et al.*, | ) | |
|     Defendants, | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion *Instanter* to Quash Subpoenas Requesting Discovery Directed to Unnamed Defendants and/or Previously Dubbed Garcia II Defendants [DE 115], filed by (1) Defendants Elva Garcia and Alpha & Omega Real Estate LLC (the "Garcia II Defendants") and (2) Steemmm Real Estate LLC, Hector Rodriguez, Jose Barajas, Graciela Barajas, Jesse's Construction LLC, IHB Real Estate LLC, REO Outlet LLC, Sergio Garcia II, and Tomasa Garcia (collectively "Garcia II Non-parties," who have been dismissed from this case) on April 20, 2012. For the reasons set forth in this Order, the Court denies the motion.

## BACKGROUND

Plaintiff Arthur D. Pringle III ("Pringle") alleges that he invested $4,845,000 in real estate deals with Defendant Sergio Garcia, but that he has not been repaid any of the money. Pringle alleges he is the victim of a fraud scheme. He initially brought suit against Sergio Garcia, his wife Marisa, and Garcia's business entities. In his Second Amended Complaint, Pringle added several Defendants, including Sergio Garcia II, Elva Garcia, Tomasa Garcia, Hector Rodriguez, Jose Barajas, Graciela Barajas, Steemmm Real Estate LLC, Alpha & Omega Real Estate LLC, REO Outlet LLC, Jesse's Construction LLC, and IHB Real Estate LLC (the movants in this case, the "Garcia II Defendants" and "Garcia II Non-parties"). Pringle alleged that Sergio Garcia operated

a Ponzi scheme and then furthered the fraud by transferring vast sums of money and property to his children and to others prior to filing bankruptcy and thereby making himself judgment proof against Pringle's claims.

In his January 6, 2012 Order on a Motion to Dismiss brought by the Garcia II Defendants and the Garcia II Non-parties (at which time they were still named Defendants in the Second Amended Complaint), Chief Judge Simon provided the following general description of the allegations in Second Amended Complaint:

> Sergio Garcia operated his real estate business through several entities. He purchased, renovated, and sold or leased residential properties throughout Northwest Indiana, and he sought investors to fund these projects. Pringle was one of those investors. Between September 2006 and May 2008, Pringle made thirteen commercial loans to two of Garcia's entities, Kerusso Konstruction and Rehab Lending Tree. As of January 31, 2009, the principal amount of Pringle's loans was more than $5 million.
>
> Garcia failed to repay Pringle, and Pringle alleges that Garcia has done the same to numerous other investors. According to Pringle, Garcia carried out his scheme by collecting money from investors, and then using some of the money on personal items, giving some to his children and relatives, purchasing real estate with some, and making some payments back to investors to keep them at bay – Charles Ponzi style. (DE 60 ¶ 42.) Then, when investors caught up to him, Garcia, Marisa, and Garcia's business entities fraudulently diverted funds to their friends and relatives, feigned destitution and filed for bankruptcy. When Pringle initially brought suit, he named Sergio and Marisa Garcia, Kerusso Konstruction Kompany LLC, Kerusso Real Estate LLC, Rehab Lending Tree LLC, Kerusso Real Estate, and Kerusso Asset Management LLC as defendants. After this case was stayed because of the bankruptcy, Pringle was permitted to file a Second Amended Complaint, adding the Garcia II Defendants and others.
>
> The Second Amended Complaint alleges a RICO violation arising from Sergio Garcia's scheme to defraud Pringle and other investors, and that an Indiana Fraudulent Transfers Act claim arises from conveyances from Sergio, Marisa, Kerusso Konstruction, and Kerusso Real Estate to the Garcia II Defendants immediately prior to the bankruptcy filings. Pringle attached numerous exhibits to his complaint, including a chart labeled Exhibit MM which was prepared by Pringle's counsel. The exhibit purports to detail the acquisition and disposition of various pieces of property, but is frankly more confusing than it is elucidating.

Jan. 6, 2012 Order [DE 97] (CJ Simon).

In that Order, Chief Judge Simon granted the Motion to Dismiss brought by the Garcia II Defendants and the Garcia II Non-parties for failure to plead fraud allegations with the requisite specificity. However, Pringle was given leave to again amend his Complaint. On February 24, 2012, Pringle filed a Third Amended Complaint, including among the named Defendants the Garcia II Defendants. Pringle did not name the Garcia II Non-parties in the Third Amended Complaint.

On March 22, 2012, Pringle issued 10 subpoenas to financial institutions or companies requesting documents regarding the accounts and transactional activity of those accounts of the Garcia II Defendants and the Garcia II non-parties.[1]

On April 20, 2012, the instant motion was filed. Pringle filed a response on May 4, 2012, and the Garcia II Defendants and the Garcia II Non-parties filed a reply on May 14, 2012.

## ANALYSIS

The movants ask the Court to quash the March 22, 2012 subpoenas seeking financial information regarding the Garcia II Defendants and the Garcia II Non-parties (1) for failure to serve counsel for the Garcia II Defendants and (2) because the subjects of the subpoenas are irrelevant to the underlying litigation and are overbroad.

First, the Garcia II Defendants request that the subpoenas be quashed because of failure of service on their counsel. In relevant part, Federal Rule of Civil Procedure 45(b)(1) provides, "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party." Fed. R. Civ. P. 45(b)(1). The Garcia II Defendants argue that Pringle did not properly provide them notice of the subpoenas. However, at the time the subpoenas were served, the Garcia II Defendants had been dismissed from the second complaint and counsel for Pringle represents in

---

[1] One of the subpoenas, submitted as Exhibit J, issued on First Federal Savings and Loan Association, represents that it was delivered to the third party on Mach 12, 2012; however the certificate of service on the face of the subpoena does not have the date filled in for the date of service.

the response brief that counsel for the Garcia II Defendants had been taken off the service list by the electronic filing system. The Garcia II Defendants do not renew this argument in their reply brief. The Court denies the Motion to Quash on this basis.

The movants then argue that the information sought by Pringle is not relevant to the underlying litigation and that the requests are overbroad. Federal Rule of Civil Procedure 45(c)(3)(a)(iii) and (iv) provides, "On timely motion, the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . or subjects a person to undue burden." The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under the federal discovery rules. *Teton Homes Europe v. Forks RV*, Cause No. 1:10-CV-33, 2010 WL 3715566, *2 (N.D. Ind. Sept. 14, 2010). Pursuant to Federal Rule of Civil Procedure 26, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Teton Homes*, 2010 WL 3715566, at * 2 (quoting *Chavez v. Daimler Chrysler*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)).

The movants argue that this cause of action simply involves a creditor-debtor relationship. They further reason that the fraudulent transfers alleged in the Third Amended Complaint "involve transfers <u>from</u> the Garcia Entities," which do not include any of the Garcia II Defendants or the Garcia II Non-parties. Def. Br., p. 4. Thus, the movants reason that any inquiry beyond the Garcia Entities, who are the Plaintiff debtors, is unnecessary and irrelevant. The Court disagrees. The

Court finds that Pringle has alleged facts in his Complaint, with further detailed explanation throughout his response brief, to render the information requested in each of the ten subpoenas relevant under the standard of Rule 26.

There are counts and allegations throughout the 96-page Third Amended Complaint related to the information sought in the subpoenas at issue. For example, in Count IV of the Third Amended Complaint, Pringle brings a claim under the Indiana Fraudulent Transfers Act, alleging in the opening paragraph of the count:

> 42. While Sergio E. Garcia, Marisa Garcia, Kerusso Real Estate and Kerusso Konstruction (hereinafter collectively the "Garcia Debtors") were indebted to Pringle, a number of transfers were made. The grantors and grantees to such transfers fraudulently intended to transfer properties from the Garcia Debtors and into the hands of individuals and entities that had no prior dealings with Pringle, so as to prevent Pringle and other creditors from collecting on any outstanding amounts owed to them.

Third Am. Compl., p.16.

Count V of the Third Amended Complaint is entitled "Criminal Conversion and Treble Damages under the Indiana Crime Victim's Relief Act and Ruse v. Bleeke, 914 N.E.2d 1 (Ind. Ct. App. 2009)." *Id*. at p. 29. Count V contains the following allegations:

> 67. The Garcia Entities through their principal Sergio created and confirmed false impressions in Pringle. Sergio represented to Pringle that Pringle's funds would be used to acquire and rehab real estate, which in turn would be sold or rented for a profit, and such profits would allow for the Garcia Entities to pay back Pringle his original investment plus interest.
>
> 68. The Garcia Entities through their principal Sergio created and confirmed additional false impressions in Pringle, because Sergio represented to Pringle that prior investments made by other investors such as Adolfo Bautista ("Bautista") and Terry Baldin ("Baldin"), were being paid by profits from the Garcia Entities' legitimate real estate activities.
>
> 69. In reality, Sergio was the mastermind behind a Ponzi scheme and other schemes intended to defraud creditors. Ultimately, the Garcia Entities used funds received from Pringle to pay creditors of the Garcia Entities and to further Sergio's Ponzi scheme.

*Id*. at p. 29.

In Count VI, Pringle brings a federal RICO claim, in which he alleges:

78. Despite the lack of cooperation in discovery efforts, based on the information gathered by Pringle to date, Pringle has uncovered a family operation that is led by Sergio, and in conspiracy with other family members, relatives and employees, Sergio has led his family operation in defrauding Pringle and others.

*Id*. at p. 41.  Count VI then contains specific allegations as to Hector Rodriguez , Elva Garcia, Jose Barajas, Garciela Barajas, Jesse's Construction LLC, REO Outlet LLC, and Sergio Garcia II.

The Court finds that the information Pringle seeks in the subpoenas is relevant to tracing the path of the money invested by Pringle with the Garcia Entities, which is relevant to the allegations that the "creditor-debtor" relationship was nothing but a cover for the Garcia Family's alleged Ponzi scheme.  Further, the fact that the Garcia II Non-parties were dismissed from the Second Amended Complaint, by itself, does not render the subpoenaed information irrelevant.  Nor is the Court persuaded by movants' reply argument that other evidence from the Garcia Entities should be enough allow Pringle to understand what compensation was received by the Garcia Entities for the transfers to the Garcia II Defendants and the Garcia II Non-parties; although that information may be relevant, it does not preclude Pringle from seeking the relevant information sought in the subpoenas.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion *Instanter* to Quash Subpoenas Requesting Discovery Directed to Unnamed Defendants and/or Previously Dubbed Garcia II Defendants [DE 115].

SO ORDERED this 20th day of July, 2012.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record