UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ARTHUR D. PRINGLE III, | ) | |
| Plaintiff, | ) | |
| v. | ) | CAUSE NO:  2:09-CV-022RM |
| MARISA GARCIA, et al. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FILED BY
ELVA GARCIA AND ALPHA & OMEGA REAL ESTATE, LLC**

Plaintiff, Arthur D. Pringle III, ("Pringle"), by counsel, files this Response to Docket

Entry Number 113, the Motion to Dismiss Complaint, filed by Defendants, Elva Garcia ("Elva")

and Alpha & Omega Real Estate, LLC ("Alpha") and in support states as follows:

**I.  Introduction**

Defendants, Marisa Garcia and Sergio Garcia through their entities Kerusso Konstruction

Kompany, LLC ("KKK, LLC") and Rehab Lending Tree, LLC ("RLT, LLC") fraudulently

acquired funds from Pringle under the pretext of "loans" earmarked for acquiring, rehabbing,

selling and renting properties.  Pringle advanced a total of $2,470,000.00 to KKK, LLC, and

such "loans" were supposed to fund the acquisition and rehabilitation of homes by KKK, LLC.

Sergio Garcia and the other Defendants have failed to provide any evidence showing that KKK,

LLC used the $2,470,000.00 to acquire and rehab homes.  Pringle further advanced an additional

$2,375,000.00 to RLT, LLC.  The loans to RLT, LLC were supposed to fund RLT, LLC's

secondary loans to prospective home buyers.  To date no one has been able to provide any

evidence that RLT, LLC made any loans with Pringle's $2,375,000.00.  On January 31, 2009, the

outstanding principal and interest on Pringle's "loans" to KKK, LLC and RLT, LLC totaled

$5,305,272.90.  Third Amended Complaint, Dock. No. 98, (hereinafter "Complaint"), ¶¶ 10, 11

and 13.

1

After KKK, LLC and RLT, LLC defaulted on their loans, Pringle began investigating where his $4,845,000.00 went, but with the exception of $1,000,000.00 seized by a third party bank, no one has been able to account for Pringle's remaining $3,845,000.00.[1]   Pringle subsequently learned that he was the victim of several fraudulent schemes perpetrated by the Garcia Family, which is the civil RICO enterprise identified in Pringle's complaint.   The first fraudulent scheme sought to obtain funds from Pringle and other victims through a Ponzi scheme overseen by the Garcia Family's leader, Sergio Garcia.   The second fraudulent scheme sought to divert funds and assets away from certain members of the Garcia Family who initially obtained those funds and into the hands of other relatives and related entities within the Garcia Family so that Pringle and other victims could not recover their funds.   These fraudulent schemes are the basis for Pringle's claims under federal and state Civil RICO, the Indiana Fraudulent Transfer Act ("IFTA"), and the Indiana Crime Victim's Relief Act, which are set forth in Counts IV through VII of Pringle's Complaint.

Pringle's Complaint identifies the "Garcia Family" as a family network overseen by its leader Sergio Garcia.   The Garcia Family includes both Elva and Alpha, which participated in the second fraudulent scheme aimed at concealing, transferring and diverting properties away from Sergio Garcia and others to the detriment of Pringle and other creditor victims.   Count IV of Pringle's complaint seeks to recover under the IFTA certain properties that were fraudulently transferred.   Of the seventy-seven total fraudulent transfers identified in Pringle's complaint, thirty-three (33) of those fraudulent transfers involved Alpha as the grantee, and Elva was the

---

[1] Sergio Garcia took $1,000,000.00 of Pringle's money to create a CD with First Midwest Bank. After Sergio Garcia created the CD, Sergio Garcia obtained a loan from First Midwest Bank and posted the CD as collateral for the loan. In his loan application to First Midwest, Sergio Garcia listed the $1,000,000 as an asset, while making no mention of his loan liabilities to Pringle.  First Midwest Bank then offset the $1,000,000 CD against its loans which were in default.  Third Amended Complaint, Paragraphs 122 to 127.

principal of Alpha.  The transfers were made in furtherance of the Garcia Family's conspiracy to defraud Pringle and other creditor victims.  The fraudulent transfers also provide the basis for Pringle to include Elva and Alpha in his claims for relief under the federal and state civil RICO statutes.

In their motion to dismiss, Elva fails to address of paragraphs 4, 5 and 6 on page 2 of the Pringle's complaint.  In paragraphs 4 and 6, Elva is identified as a member of KKK, LLC and RLT, LLC which were the recipients of Pringle's funds during the first fraudulent scheme that defrauded Pringle of his $4,845,000.00 principal "investment."   KKK, LLC was involved as grantor in 41 of the 77 fraudulent transfers.  In paragraph 5, Elva is identified as a member of Kerusso Asset Management LLC, which was an agent and manager for KKK, LLC, RLT, LLC and other related entities that initially acquired the funds from Pringle.  Elva and Alpha's involvement in the Garcia Family operations are sufficiently pled to form the basis for Pringle's claims against these two defendants.

## II.  Standard

When reviewing claims sought to be dismissed under Rule 12(b)(6), a court should  "ask whether the plaintiffs can prove any set of facts supporting their claims that would entitle them to relief."  American United Logistics, Inc. v. Catellus Development Corporation, 319 F.3d 921, 925-926 (7th Cir. 2002). "Upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), plaintiff's allegations must be accepted as true.  Morgan v. Bank of Waukegan, 804 F.2d 970, 973 (7th Cir. 1986).  Moreover a court should "accept all the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving parties."  American United Logistics at 926.  A complaint can be dismissed for failure to sate a claim only if it is clear that no relief could be granted under any set of facts that could be proved consisted with plaintiffs' allegations.  Morgan at 973.  "To survive a motion to dismiss, the complaint 'must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Appert v. Morgan Stanley Dean Witter, Inc.</u>, 673 F.3d 609, 622 (7th Cir. 2012) *quoting* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). All the allegations in Pringle's Complaint point to a complex fraudulent scheme aimed at obtaining well over six million dollars from Pringle and others through fraudulent "loan" transactions that subsequently concealed and diverted assets to prevent any recovery of such funds.  Because this Court must accept the facts alleged in Pringle's Complaint to be true and because such facts support a basis for Pringle to recover under his theories for relief, Pringle respectfully requests that this Court find the Complaint sufficiently pleads all counts for relief and deny Elva and Alpha's motion to dismiss.

### III.  Analysis

**A.**     **Pringle has adequately pled the elements of Indiana Fraudulent Transfers Act in Count IV of the Complaint.**

Pringle's claims under the Indiana Fraudulent Transfers Act are set forth in Count IV of the Complaint.  Count IV addresses the Garcia Family's efforts to divert assets away from the borrowers and guarantors under the Pringle "loan documents" and into the hands of other relatives, friends and related entities to the detriment of Pringle's collection efforts.  Ind. Code § 32-18-2-14, provides:

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> **(1)**     with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> **(2)**     without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> **(A)**     was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

4

> **(B)**      intended to incur or believed or reasonably should have
> believed that the debtor would incur debts beyond the debtor's ability
> to pay as the debts became due.

I.C. § 32-18-2-15 provides

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor
> whose claim arose before the transfer was made or the obligation was incurred if:
> **(1)**      the debtor made the transfer or incurred the obligation without
> receiving a reasonably equivalent value in exchange for the transfer or obligation;
> and
> **(2)**      the debtor:
>> **(A)**      was insolvent at that time; or
>> **(B)**      became insolvent as a result of the transfer or obligation.

In cases interpreting I.C. § 32-18-2-14 and 15, courts often refer to those transfers that include
the actual intent to hinder, delay or defraud creditors under I.C. § 32-18-2-14(1) as those
transfers involving "actual fraud." Those transfers wherein less than reasonable equivalent value
is exchanged, under either I.C. § 32-18-2-14(1) or 32-18-2-15, are referred to as transfers
involving "constructive fraud." "[P]arties alleging [actual] fraud under Indiana Code Section 32
must establish that 'the debtor made the transfer or incurred the obligation with actual intent to
hinder, delay or defraud . . ..'" Fire Police City County Fed. Credit Union v. Eagle, 771 N.E.2d
1188, 1191, FN 3 (Ind. Ct. App. 2002) quoting I.C. 32-18-2-14. The elements of constructive
fraud under the IFTA are twofold, (1) a debtor made the transfer without receiving a reasonably
equivalent value in exchange for the transfer and (2) the transfer was made while the debtor was
either insolvent at that time or became insolvent as a result of the transfer. See I.C. § 32-18-2-15
and Fire Police City County Fed. Credit Union, at 1191.

In the case of Manning v. Wallace (In re First Financial Associates), 371 B.R. 877 (N.D.
Ind. Bankr. 2007), the Northern District of Indiana Bankruptcy Court explained the Indiana
Fraudulent Transfers Act ("IFTA") and the distinction between actual fraud and constructive
fraud.

> Indiana law recognizes two different types of fraudulent conveyances -- those which are actually fraudulent and those which are only constructively so. An "actual fraudulent conveyance" is made with the intent to hinder, delay or delay one's creditors . . .. I.C. 32-18-2-14. A "constructively fraudulent conveyance," on the other hand, has nothing to do with the intent or motivation surrounding the transfer. Instead, its fraudulent nature is determined solely by the circumstances of the transaction itself. A transfer is constructively fraudulent if it was made for less than reasonably equivalent value and the debtor was either insolvent at the time or became insolvent as a result of the transfer. I.C. 32-18-2-15. . . . In either case . . . the transfer may be avoided under Indiana law.  Id. at 899.

Count IV of Pringle's Complaint alleges both "actual fraud" and "constructive fraud." [2]

All of the transfers, transferors and transferees are listed in subparagraphs 46.A through 46.YYY of the Complaint.   In support of Pringle's actual fraud claim, Paragraph 49 of Pringle's Complaint expressly provides that the 77 transfers identified in Paragraph 46 were undertaken by the transferors "with 'actual intent to defraud' any and all creditors . . . which included Pringle. See I.C. § 32-18-2-14(1)."  Complaint, ¶ 49.  Complaint Paragraph 46 identifies the 77 transfers that are initially at issue in this case. To allege constructive fraud, Complaint Paragraph 50 expressly provides that the 77 transfers at issue "were undertaken . . . without the . . . [transferors] 'receiving reasonably equivalent value in exchange for such transfers.'  See I.C. § 32-18-2-14(2) and 32-18-2-15(2)."  Complaint, ¶ 50.  Pringle doubts that any consideration was exchange, but Elva and Alpha have yet to turn over any discovery responses that might shed some light on that issue.   Paragraph 51 of the Complaint alleges that the 77 transfers were undertaken "while the Garcia Debtors were insolvent.  See I.C. § 32-18-2-15(2)(A)."  Complaint,

---

[2] Elva and Alpha appear to mistakenly argue that Fed. R. Civ. Pro. 9(b) requires IFTA pleadings to allege a specific misrepresentation.  The Seventh Circuit, analyzed a similar claim under Illinois' version of the Uniform Fraudulent Transfer Act ("UFTA").  In G.E. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1079 (7th Cir. 1996), the Seventh Circuit correctly noted that because the UFTA creates a specific cause of action with specific elements established by the act, which do not include a misrepresentation, a plaintiff need not plead a specific misrepresentation, but rather the plaintiff should plead the specific elements expressly provided by the UFTA.

¶ 51.  Alternatively, Pringle alleges that the 77 transfers caused the "Garcia Debtors to become insolvent as a result of the transfers.  See I.C. § 32-18-2-15(2)(B)."  Complaint, ¶ 52.  Complaint Paragraphs 54 and 55 further place the transfers in context, wherein the transferors and the transferees sought to divert assets away from Sergio and his related bankrupt entities to the detriment Pringle and other creditors of the Sergio Defendants.  Using the elements expressly set forth in I.C. § 32-18-2-14 and 15 and guidance from <u>Fire Police City County Fed. Credit Union</u> and <u>Manning</u>, Pringle has sufficiently pled the elements of a fraudulent transfer claim.

Elva and Alpha argue that Count IV is not pled with specificity, given the heightened pleading requirements of Fed. R. Civ. Pro. 9(b).  Pringle specifically pled the "who, what, where, when and how" of the fraudulent transfers at issue.  <u>Rehab Care Group, East, Inc. v. Camelot Terrace, Inc.</u>, 2012 U.S. Dist. LEXIS 51950, 19 (N.D. Ill. 2012) (Northern District of Illinois denied motion to dismiss because Plaintiff adequately pled his fraudulent transfer claim under Illinois' version of the Uniform Fraudulent Transfers Act).  The seventy-seven (77) transfers at issue are alleged in subparagraphs 46.A to 46.YYY of the Complaint.  Each subparagraph provides specific details on each transfer.  For example, the first transfer involving Alpha & Omega Real Estate LLC is identified in subparagraph 46.W on page 17 of Pringle's Complaint, which reads as follows:

> **W.**    Through a warranty deed dated September 2, 2008 and recorded with the Lake County Recorder's Office on September 3, 2008, Alpha & Omega Real Estate LLC obtained title to the property commonly known as 720 Johnson St., Gary, IN  46402; such property was previously owned by a Garcia Debtor, Kerusso Real Estate.

The "who" was Kerrusso Real Estate LLC as grantor and Alpha & Omega Real Estate LLC as grantee.  The "what" is the property at 720 Johnson St., Gary, IN 46402.  The "when" was September 2, 2008, the deed date, and September 3, 2008, the recording date, and the "how" was a transfer through a warranty deed.  All seventy seven transfers identified in subparagraphs 46.A

to 46.YYY follow the same format as subparagraph 46.W, which specifies the "who, what, when and how." Paragraph 59 of the Complaint further identifies the "where" for all the transfers, because the transfers began at the Garcia Family headquarters located at 2931 Jewett Avenue, Highland, Indiana and ended at the Lake County Recorder's Office at 2293 N. Main Street, Crown Point, Indiana. The facts are specifically pled in Paragraphs 41 to 61 Count IV of Pringle's Complaint. Pringle's Complaint satisfies the requirements of Fed. R. Civ. Pro. 9(b).

Of the 77 fraudulent transfers pled in Paragraphs 46.A to 46.YYY, 33 transfers involve Alpha as the grantee, as set forth in Paragraphs 46.R. to 46.WWW. Elva is also a member of KKK, LLC, which was the grantor in 41 of the 77 fraudulent transfers. See Complaint, subparagraphs A to K, N to P, T, V, TT, VV to XX, ZZ to CCC, GGG, and III to XXX of Paragraph 46. Pringle also alleges Elva to be the principal of Alpha in Paragraph 81.D of the Complaint.

Despite Alpha's involvement in 33 of the 77 transfers, Alpha seeks to have itself dismissed from Pringle's Count IV, because it mistakenly argues that grantees cannot be the subject of fraudulent transfer claims. Contrary to the Defendants' arguments, I.C. §32-18-2-18 expressly provides that to the extent that a transfer is voidable in an action by a creditor under Section I.C. §32-18-2-17(a)(1), a creditor may recover a judgment against the **first transferee** of the asset or the person who benefits from the transfer or any **subsequent transferee** other than a good faith transferee who acquired the property for value. I.C. §32-18-2-18(b) (**emphasis** added). A creditor may also obtain relief against a transfer and obligation that includes avoidance of the transfer. I.C. § 32-18-2-17(1). The Garcia Defendants' arguments ignore the express language of the IFTA.

I.C. §32-18-2-18(a) further provides that a transfer or an obligation is not voidable under I.C. §32-18-2-14(1) against a person who took in good faith, and for a reasonable equivalent

8

value.  The transferee bears the burden to establish the good faith for value defenses.  Boyer v. Crown Stock Distrib., Inc., 2009 U.S. Dist. LEXIS 12393 (N.D. Ind. 2009) *confirmed in part and reversed in part on other grounds by* Boyer v. Crown Stock Distrib., 587 F.3rd 787 (7th Cir. 2009).  In Hoesman v. Sheffler, 886 N.E.2d 622 (Ind. Ct. App. 2008), the Indiana Court of Appeals concluded that a debtor is not even a necessary party in a fraudulent transfer action under the Uniform Fraudulent Transfer Act.  Id. at 627.  The Southern District Court of Indiana further discussed whether an officer or director of first transferee can be held personally liable.  Symons Int'l Group, Inc. v. Cont'l Cas. Co., 2007 U.S. Dist. LEXIS 27356 (S.D. Ind. 2007).  The dicta in Symons Int'l Group, Inc. makes it clear that transferees are liable unless the transferee can prove their affirmative defenses of good faith and reasonable equivalent value.  In interpreting the uniform fraudulent transfer act, which was also adopted in Ohio, Ohio courts have held that a transferee in a fraudulent transfer claim is a necessary and proper party.  Hitachi Medical Systems America, Inc. v. Branch, 2011 U.S. Dist. LEXIS 111907, 28.  The United States District Court in the Northern District of Illinois stated that transferees are necessary parties under the Uniform Fraudulent Transfer Act.  Sullivan v. Hochfelder, 834 F. Supp. 1036, 1037 (ND Ill. 1993).

Elva and Alpha cite to the case of Shi v. Yi, 921 N.E.2d 31 (Ind. Ct. App. 2010) to support their argument.  However, their reliance on Shi is misguided.  Shi is inapplicable to this case because the facts in Shi are distinct from the facts of this case.  In Shi, the defendant, Enterprise Title ("Enterprise"), sought to dismiss the case because it merely acted as a title company and escrow agent in the property transfers at issue in Shi.  Enterprise argued that Shi did not plead "and cannot prove, that Enterprise *ever paid or received funds from a grantor* or grantee of the [Property]."  Id. at 35.  In Shi, Enterprise was able to escape liability under the fraudulent transfer claims in such case, because Enterprise never paid or received funds from the

9

grantor at issue in such case.  Enterprise was not a grantee in the <u>Shi</u> case, but in Pringle's complaint, paragraphs 46.A to 46.WWW list Alpha as the grantee in 33 of the 77 alleged fraudulent transfers.  Pringle's complaint further provides that Alpha received title to 33 properties, with no consideration exchanged.  Therefore, factually <u>Shi</u> is distinguished from this case, and <u>Alpha</u> cannot rely on <u>Shi</u> to escape liability under the uniform fraudulent transfer claims act.

Alpha's argument that <u>Shi</u> establishes Indiana law that only the debtor is liable under IFTA is wrong.  As explained above, Alpha takes <u>Shi</u> out of context.  The <u>Shi</u> appellate court analyzed the case of <u>Four Seasons Mfg. v. 1001 Coliseum, LLC</u>, 870 N.E.2d 494, 511 (Ind. Ct. App. 2007) to address the issue of who is a "debtor" under IFTA.  The appellate court found that Enterprise was not a "debtor" liable under IFTA, because it was not a party participating in the fraudulent transfers as either grantor or grantee.  <u>Shi</u>, at 36 to 41.  In <u>Four Seasons</u>, Four Seasons Manufacturing was found to be a "debtor" liable under IFTA because of its status as the parent company for both the grantor and grantee in the alleged fraudulent transfers.  In both <u>Shi</u> and <u>Four Seasons</u>, the courts addressed was who was a "debtor" subject to the IFTA, but neither case provide any Indiana law that prohibits a grantee in a fraudulent transfer from being subject to liability under the IFTA.

Contrary to Elva and Alpha's arguments, Indiana case law confirms that claims under IFTA may be properly pursued against both grantors and grantees in fraudulent transfer cases.  In <u>Rose v. Mercantile National Bank of Hammond</u>, 868 N.E.2d 772 (Ind. 2007), the Indiana Supreme Court upheld the trial court's IFTA judgment rendered against Rose and Underwood, both of which were grantees in the alleged fraudulent transfers at issue in the <u>Rose</u> case.  Alpha's claim that it cannot be found liable under IFTA, merely because it was a grantee in the 33 of the 77 fraudulent transfers at issue in this case is contrary to Indiana law.  Pringle therefore

respectfully requests that this Court reject the arguments presented by Elva and Alpha against Pringle's IFTA claims.

Given Alpha's role as transferee in 33 of the 77 fraudulent transfers, there should be no dispute that Alpha should remain a defendant as to Count IV of Pringle's complaint.  However, Elva also seeks to have herself removed from Count IV of Pringle's complaint, because she mistakenly argues that "Elva's name is completely absent from the Factual Background and Counts I-V, the first 40 pages in total of the Third Amended Complaint . . ..  Elva is not named or identified in any way or by any act alleged until the averments in Count VI on page 42 of the Complaint."  Based on such assertions, Elva concludes that she cannot be subject to Pringle's fraudulent transfer claims.  However, Elva misstates the allegations in Pringle's Complaint.

Counsel for Elva fails to address paragraphs 4, 5 and 6 on page 2 of the Pringle's Complaint.  In paragraphs 4 and 6, Elva is identified as a member of KKK, LLC, Kerusso Asset Management, LLC and RLT, LLC.  KKK, LLC and RLT were the recipients of Pringle's funds during the first fraudulent scheme that defrauded Pringle of his $4,845,000.00 principal "investment," while Kerusso Asset Management, LLC was the managing company for the two "borrower companies."  As member of KKK, LLC and RLT, LLC, Elva benefited from the $4,845,000.00 principal "investment" made by Pringle, and as member of KKK, LLC, Elva is linked to 41 of the 77 fraudulent transfers identified in paragraph 46, because KKK, LLC was grantor in 41 trasnfers.  Elva is also identified as the principal of Alpha in Paragraph 81.D of the Complaint.  Elva's direct links to Alpha and other defendants are another reason as to why Elva should not be dismissed from Count IV.

Shareholders, directors and officers have sought to escape liability under the uniform fraudulent transfer laws, by arguing that the corporation and not the individual was involved in the fraudulent transfer, and such arguments have been rejected by other courts.  See Symons Int'l

11

Group, Inc. v. Cont'l Cas. Co., 2007 U.S. Dist. LEXIS 27356, 59 *quoting* DFS Sec. Healthcare Receivables Trust v. Caregivers Great Lakes, Inc., 384 F.3d 338, 348 (7th Cir. 2004) ("[T]he Seventh Circuit had occasion to analyze the issue, and indicated that 'there is good reason to believe [Indiana common law rule holding that an officer or shareholder of a corporation can be held personally liable if he personally participates in the fraud] would apply." Id. at 356 (S.D. Ind. 2007).  See also Hitachi Medical Systems America, Inc. v. Branch, 2011 U.S. Dist. LEXIS at 9 to 10, HN6 (In confirming that fraudulent transfer claims against corporate officers can be maintained even if the corporation was the transferor or transferee, the Northern District Court of Ohio wrote, "A corporate officer can be held personally liable for tortious acts he or she has committed without the necessity of corporate veil piercing.")  Because Elva was a member of KKK, LLC, which was involved in 41 of the 77 fraudulent transfers, and because of the cases allowing fraudulent transfer claims to be pursued against individuals affiliated with the transferor/transferee corporate entities, Pringle asks this Court to reject Elva's efforts to be eliminated from Pringle's Count IV.

**B.    Pringle has adequately pled the elements of a Federal Civil RICO claim.**

Pringle has also pled the requisite elements for both his Civil RICO claims, contrary to Defendants' arguments.  "RICO penalizes people who associate with or operate 'enterprises' by means of a 'pattern of racketeering activity.'"  McCool v. Strata Oil Co., 972 F2d 1452, 1464 (7th Cir. 1992) citing 18 U.S.C. § 1962(a)-(d).  "The elements of a Civil RICO claim . . . are 1) a violation of the RICO statute, including proof that the defendant has participated in a pattern of racketeering, and 2) an injury to business or property."  Id.  The violation of the RICO statute further breaks down into four elements, "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Midwest Grinding Co. v. Spitz, 976 F2d 1016, 1019 (7th Cir. 1992).

As to the injury element, Pringle has suffered injury of property, because the total outstanding principal and interest on Pringle's loans alone totaled $5,305,272.90 as of January 31, 2009.  Complaint ¶¶ 10, 11, 27 and 146.  Pringle has been limited in his collection efforts because his efforts to recover have been impeded by the Defendants' actions, which include but are not limited to fraudulently transferring 77 properties, 33 of which include Alpha as a transferee and 41 of which include KKK, LLC as a transferor, while Elva is a principal member of both entities.  See Paragraph 145 of the Second Amended Complaint.  Such factual allegations confirm that Pringle's Complaint pled the element of injury.

Pringle's RICO claims against Elva and Alpha arise from their participation in the Garcia Family's scheme, which initially acquired funds from Pringle through a Ponzi scheme and sought to transfer and conceal assets to the detriment of creditors.  The enterprise is specifically identified as the "Garcia Family," whose members and their roles are identified in paragraphs 79 to 89 of Pringle's complaint.  Pringle's Complaint includes Elva and Alpha as members of the Garcia Family in subparagraphs 81.D and 81.O.  Elva is further included in the actions of KKK, LLC and RLT, LLC given her role as member in such entities and given those entities involvement in the fraudulent "loan transactions" with Pringle.  Elva is further tied to the Garcia Family operations through the subsequent fraudulent transfers which included KKK, LLC and Alpha as grantor and grantee, respectively.

The crux of Defendants' motion focuses on whether Pringle pled the predicate acts, which constitute a pattern of racketeering, with the required specificity.  Fed. R. Civ. Pro. 9(b) requires a plaintiff "at a minimum, describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations."  Slaney v. International Amateur Athletic Federation, 244 F.3d 580, 597

(7th Cir. 2001). An analysis of the Complaint reveals that the predicate acts were pled with the requisite specificity.

Pringle specifically pleads all the fraud committed by Elva and Alpha as it relates to the Garcia Family operations as was outlined in the section above relating to the fraudulent transfer claims of Count IV. Alpha as the grantee entity and Elva as the principal of Alpha were involved in 33 of the 77 fraudulent transfers aimed at diverting properties away from Pringle and other victims of the Garcia Family operations. KKK, LLC is identified as the grantor in 41 of the 77 fraudulent transfers, and Elva is identified as a member of KKK, LLC. The 33 property transfers linked to Alpha and Elva are a sufficient basis for Pringle's Civil RICO claims against both Defendants. Moreover, the 33 fraudulent property transfers involving Alpha as grantee and the 41 fraudulent transfers involving KKK, LLC as grantor surpass the minimum requirement of two predicate acts required to plead a Civil RICO claim. The details of each of the 33 property transfer are set forth in paragraphs 46.R to 46.WWW by providing the date that the deed was executed, the date that the deed was recorded with the Lake County Recorder's Office, the property at issue in the transfer, along with the name of the respective grantor and grantee involved in each transfer.

Paragraphs 57 to 61 together with 114 to 121 of Pringle's Complaint outline how the defendants' fraudulent transfers resulted in numerous counts of mail fraud being committed every time a deed and a tax bill were mailed as a result of the fraudulent transfer. Alpha as a grantee, KKK, LLC as a grantor, and Elva as a principal of both are tied into the mail fraud given their respective roles in the fraudulent transfers. Elva and Alpha cite to Jepsen v. Makita Corp., 34 F3d 1321, 1328 (7th Cir. 1994), in support of the premise that "loose references to mailings and telephone calls in furtherance of a purported scheme to defraud will not do" and "[i]nstead,

14

the plaintiff must within reason, describe the time, place and content of the mail and wire communications.  However, the facts of Jepsen are not applicable to the facts in this case.

Unlike the plaintiff in Jepsen, Pringle has pled his mail fraud with specificity, because the timing of the mailings are controlled by the date for which each deed was dated and recorded.  Such specific dates as they relate to the deeds are initially set forth in paragraphs 46.R to 46.WWW.  For example, subparagraph 46.W on page 17 of Pringle's Complaint, identifies "a warranty deed dated September 2, 2008 and recorded with the Lake County Recorder's Office on September 3, 2008."  Complaint, ¶ 46.W.  The timing allegations of Pringle are then tied into the mail fraud at issue within paragraphs 117 to 119 of the complaint, which relate to the mailings sent by the Lake County Recorder's Office and Lake County Treasurer's Office.  Paragraph 117 of the Complaint sets forth how the mailing of each deed are dependant on the recording date of the deed, using the standard practices of the Lake County Recorder's Office.

Using subparagraph 46.W as an example, the recorded warranty deed for such fraudulent transfer would have been mailed approximately "six to eight weeks" after September 3, 2008, using the Recorder's standard practices identified in Paragraph 117.  Paragraph 118 and 119 then provide specific dates for tax bills based on the timing of the payment dates for the real estate taxes in Lake County.  Because the Lake County Treasurer's Office has a practice of mailing tax bills three to four weeks prior to the due date, the Lake County Treasurer would have mailed out tax bills to Alpha in the last week of September 2008, between January 16 and 22 of 2009, on or about October 2, 2009, etc., using the dates provided in subparagraphs 119.G to 119.S.  Moreover, the grantee, Alpha, and either the Lake County Recorder's Office or the Lake County Treasurer's Office are the parties to such communications via mail as set forth in the above referenced paragraphs.

15

Paragraphs 47 to 61 further elaborate on the fraudulent nature of the transfers and provide additional details on the parties' knowledge, the parties' intent, the location of their execution of documents, and other specifics relating to Pringle's fraudulent transfer claims.  Elva and Alpha are mistaken when they argue that Pringle's complaint does not specify the time place and content of the alleged communications.  Other district courts have denied motions to dismiss when plaintiffs seek RICO claims that use predicate acts of mail fraud, wire fraud and other acts that specifically arise from fraudulent transfers.  Fraudulent transfers in and of themselves are not predicate acts under RICO, but fraudulent transfers may provide the context for a fraudulent scheme that give rise to wire and mail fraud, both of which are predicate acts under RICO.  See Levit v. Brodner, 75 B.R. 281, 283 to 285 (N.D. Ill. 1987).  See also The Cadle Company v. Flanagan, 271 F. Supp. 2d 379, 384 to 387 (D. Conn. 2003).[3]  Elva and Alpha do not have a factual or a legal basis to support the motion to dismiss with regards to the predicate acts.

Also, Elva and Alpha argue that Pringle lumped them in with the other defendants and that Elva and Alpha have no real relation to the Garcia Family.  Paragraphs 46.R to 46.WWW and the other related paragraphs cited above, demonstrate specific instances where Alpha was a grantee of property from other members within the Garcia Family in an effort to fraudulently transfer property to the detriment of Pringle and other victims of the Garcia Family operations. This is not a case where Elva and Alpha were linked to the Garcia Family, simply because of

---

[3] Both Levit and Cadle deal with fraudulent transfers under the Bankruptcy Code, where the Bankruptcy Trustee stands in the shoes of the creditors.  However, federal courts can look to bankruptcy decisions for guidance on the uniform fraudulent transfers act.  See Manning v. Wallace, 371 B.R. 877, 899 to 900, N. 1 and 2 ("Indiana has adopted the Uniform Fraudulent Transfer Act, the UFTA, which has been codified as I.C. 32-18-2 et seq. Much of the UFTA has been derived from the Bankruptcy Code's provisions concerning fraudulent transfers. As a result, the court can look to bankruptcy decisions for guidance concerning what is otherwise a matter of state law.")

their familial relationships.  Pringle's complaint specifically shows how Elva and Alpha were involved in the Garcia Family's efforts to fraudulently transfer 33 properties.  The details contained in paragraphs 46.R to 46.WWW, paragraphs of 47 to 61, paragraphs 57 to 61 and paragraphs 114 to 121, confirm that Elva and Alpha were not merely lumped in with the other Garcia Family Defendants and this Court should deny Elva and Alpha's motion to dismiss.

     **C.    Pringle also seeks to hold the defendants accountable through the defendants' conspiracy.**

     Even if Pringle had failed to plead with specificity the facts as to the predicate acts relating to Elva and Alpha, Civil RICO aims to attach liability to those who are conspirators as opposed to limiting liability solely to those who are perpetrators of a specific fraud.  If this Court disregarded the 33 property transfers and the predicate acts arising from same, one cannot overlook the conspiracy that ties both Elva and Alpha to the Garcia Family.

     In <u>Gagan v. American Cablevision</u>, 77 F.3d 951, 961 (7th Cir. 1995), the Seventh Circuit addressed the role of conspirators in the context of Civil RICO.

> It was not necessary for Gagan to prove the actual commission of predicate acts in order for him to prove a RICO conspiracy. <u>Schiffels</u>, 978 F.2d at 348. Furthermore, the defendants need not have agreed to actually commit the predicate acts themselves or even to participate in the commission of those acts so long as they agreed that the acts would be committed on behalf of the conspiracy. <u>United States v. Quintanilla</u>, 2 F.3d 1469, 1484 (7th Cir. 1993); <u>United States v. Campione</u>, 942 F.2d 429, 437 (7th Cir. 1991); United States v. Glecier, 923 F.2d 496, 500 (7th Cir.), cert. denied**,** 502 U.S. 810, 116 L. Ed. 2d 31, 112 S. Ct. 54 (1991). Thus, to establish a conspiracy to violate RICO, it was sufficient that Theurer and Tripp acted on the defendants' behalf; the conspiracy defendants themselves did not have to be the ones to act. <u>Neapolitan</u>, 791 F.2d at 498 (RICO conspiracy liability is broad enough "to encompass those persons who while intimately involved in the conspiracy, neither agreed to personally commit nor actually participated in the commission of the predicate" offenses. <u>Id.</u> at 961.

     Based on Civil RICO law as explained in <u>Gagan</u>, each individual need not be linked to every single predicate act committed in furtherance of the conspiracy.  The mere agreement to conspire on a fraudulent plan leads to liability under Civil RICO.  As was the case in <u>Gagan</u>,

17

some but not all the defendants may end up committing the predicate acts in furtherance of the conspiracy, but all co-conspirators are subject to Civil RICO, even if certain co-conspirators did not act beyond their agreement to conspire with the other defendants.

While the Elva and Alpha argue that their involvement in the Garcia Family operations are not equal to the involvement of others defendants, such argument are irrelevant given the Seventh Circuit's decision in Gagan.  "[A]ll that is required to support a RICO conspiracy violation is an agreement to acquire or maintain an interest in or control of an enterprise, or to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity." Id. at 962.  "[D]efendants only had to agree to the commission of predicate acts which themselves could form a pattern of racketeering activity; the predicate acts need not have been committed."  Id.  Every single defendant may not have had the same level of involvement as other defendants.  Pringle's Complaint specifically pleads the conspiracy in paragraphs 54, 55, 81.A, 86, 103, 111, 115, 116, 139.P, 170, 173, 182, 190, 206, 211, 214.  Both Elva and Alpha are included in Paragraph 190, which states that KKK, LLC, Alpha, Elva and others "knowingly and intentionally conspired with Sergio Garcia and other members of the Garcia Family to defraud Pringle and other creditors of the Garcia Entities as outlined above."  Complaint, ¶ 190. Pringle's Civil RICO claim must be put in the context of the Seventh Circuit's decision in Gagan, and Pringle requests that this Court apply the law in Gagan to deny the Elva and Alpha's motion to dismiss.

### D.    Elva and Alpha's arguments on Indiana Civil RICO fail to acknowledge Alpha's role as a grantee in 33 of the 77 fraudulent transfers.

In response to Pringle's Indiana Civil RICO claims in Count VII of Pringle's complaint, Elva and Alpha primarily rely on the sole case of Klinker v. First Merchants Bank, N.A., 964 N.E.2d 190 (Ind. 2012).  However, the Klinker case is inapplicable to the motion before this

court, because the court had to address the sufficiency of evidence needed for a party to prevail on summary judgment.  The Fed. R. Civ. Pro. 12 dismissal standard is much different.  The quotations and citations to <u>Klinker</u> made by Alpha and Omega, must be limited to the summary judgment context.  In <u>Klinker</u>, the standard for ruling was "no genuine issues of material fact and that it is entitled to judgment as a matter of law."  <u>Id.</u> at 193.  In this case the Court considers "whether the plaintiffs can prove any set of facts supporting their claims that would entitle them to relief."  <u>American United Logistics, Inc. v. Catellus Development Corporation</u>, 319 F.3d 921, 925-926 (7th Cir. 2002).

I.C. § 35-43-5-4(8) provides, "A person who: . . . with intent to defraud the person's creditor or purchaser, conceals, encumbers, or transfers property; . . . commits a Class D felony." The facts alleged in Pringle's complaint make it clear that KKK, LLC, Sergio Garcia, Marisa Garcia and other parties that owed money to Pringle transferred property to Pringle in an effort to conceal and transfer properties away from the original grantor and into the hands of the Grantee. Pringle is not pursuing a claim under I.C. § 35-43-5-4(8) against Elva and Alpha, but rather the actions of KKK, LLC, Sergio Garcia, Marisa Garcia and other defendants, constitute the predicate acts, which form the basis for Pringle's Indiana Civil RICO claims that seek to attack the conspiracy of the Garcia Family, which includes Elva and Alpha.  Pringle properly pleads an Indiana Civil RICO claim against the conspiracy within the Garcia Family operations, which included Elva and Alpha's involvement as transferees to fraudulent property transfers that violated I.C. § 35-43-5-4(8).

Under I.C. § 35-45-6-1(e) "'Racketeering activity' means to commit, to attempt to commit, to conspire to commit a violation of, or aiding and abetting in a violation of any of the following: . . . (17) Fraud (IC 35-43-5-4(1) through IC 35-43-5-4(10)) . . .."  As set forth above, Elva and Alpha first conspired with the Garcia Family, which defrauded Pringle by taking his

funds and then transferring the funds so that Pringle could not recover.  Pringle has demonstrated that as alleged, Elva and Alpha have aided and abetted such conduct.  The conspiracy involving Elva and Alpha along with their efforts to aid and abet the conspiracy are in the Complaint and in this response.  The arguments of Elva and Alpha relating to Pringle's Indiana civil RICO claims must fail.

> **E.  Elva and Alpha fail to cite to any law that requires Pringle to pursue his claims against Elva and Alpha in proceedings supplemental and not in his initial complaint.**

The final argument in Elva and Alpha's motion to dismiss is that Pringle should bring his complaint against Elva and Alpha during proceedings supplemental under Fed. R. Civ. P. 69(a), and not in Pringle's original complaint filed under Fed. R. Civ. P. 3 and 7.  Similar to the other defendants in this case, Elva and Alpha seek to minimize Pringle's complaint to a "creditor/borrower relationship" that went awry.  However, as explained in Pringle's complaint along with this response, Pringle's dealings with the Garcia Family were much more than your typical "creditor/borrower relationship."

With the exception of $1,000,000.00, which Sergio Garcia first put into a CD and pledged as collateral for a third party bank loan without disclosing the liabilities owed to Pringle, and which was then seized by a third party bank after Sergio Garcia defaulted on his loan to the bank, none of the Garcia Family members can account for the remainder of Pringle's $3,845,000.00 principal investment.  Pringle's Complaint further confirms that the relationship between Pringle and Garcia was more akin to the relationship of Charles Ponzi and his victims, given the other known victims of Baldin, Bautista and others referenced in Pringle's complaint. Pringle's Complaint also confirms that in addition to the fraudulent initial efforts aimed at obtaining Pringle's funds, the Garcia Family also undertook a second fraudulent scheme to transfer and conceal assets to the detriment of Pringle and other creditors.  Therefore, Elva and

Alpha miss the mark when they attempt to limit the relationship of Pringle and Sergio Garcia to that of a simple judgment creditor and debtor. A third scheme also diverted cash rents and sales proceeds from properties into the hands of other related entities.

Pringle's Complaint specifically pled allegations as they relate to Elva and Alpha's involvement in the fraudulent scheme to transfer and conceal 33 properties, which have led to Pringle seeking claims of relief under the IFTA, Federal Civil RICO and Indiana Civil RICO. Moreover, a review of the numerous cases interpreting Fed. R. Civ. P. 69(a), which limits a party's ability to discover information in proceedings supplemental and which are cited by Elva and Alpha are completely inapplicable to the motion to dismiss, which is presently before the court. Pringle is not pursuing discovery under Fed. R. Civ. P. 69 and Fed. R. Civ. P. 69 and the cases cited by Elva and Alpha do not prohibit Pringle from pursuing his claims against Elva and Alpha in his original Complaint. Pringle acknowledges that a "creditor/borrower relationship" is the basis for Pringle's complaint under Counts I, II and III of Pringle's complaint, which Elva and Alpha do not challenge. However, this Court cannot overlook Counts IV, V, VI and VII, and this court should "accept all the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving parties." American United Logistics, Inc. v. Catellus Development Corporation, 319 F.3d 921, 926 (7th Cir. 2002).

Elva and Alpha's concession that Pringle may conduct proceedings supplemental against Elva and Alpha if he prevails, completely undermines Elva and Alpha's efforts to have them dismissed from this case. If Elva and Alpha were included in proceedings supplemental, then such an inclusion in the proceedings supplemental would acknowledge that Pringle could have brought his complaint against Elva and Alpha in this initial stage of the case. "[W]hen an enforcement action [proceedings supplemental] is 'adequately related' to the prior proceeding such that it could have been brought as part of the earlier suit, no separate basis of federal

21

jurisdiction is required." <u>Sullivan v. Hochfelder</u>, 834 F. Supp. 1036, 1038 (N.D. Ill. 1993) *citing*

<u>Argento v. Village of Melrose Park</u>, 838 F.2d 1483, 1489 & N.9 (7th Cir. 1988).

      In <u>Argento</u>, the Seventh Circuit "held that the lower court had supplementary jurisdiction where the enforcement action and the prior proceeding arose out of a 'common nucleus of operative fact', was not brought merely to avoid jurisdictional problems, and where judicial convenience and economy were served." <u>Id.</u>  No such case exists to support Elva and Alpha's arguments that are contrary to the existing jurisprudence on the topic.  If all matters can be tried in the initial trial stage of this case as opposed to having to litigate matters against certain defendants in the first part of this case and against Elva and Alpha in subsequent proceedings supplemental, judicial economy is served.

## IV.  Conclusion

      For the reasons explained above Pringle concludes that Defendants' motion to dismiss must fail, because Pringle has adequately and specifically pled the facts supporting all his claims for relief.

      WHEREFORE, Pringle, by counsel, respectfully requests that this Court deny the motion to dismiss filed by Elva and Alpha, and for all other just and appropriate relief.

                Respectfully submitted,
                KORANSKY, BOUWER & PORACKY, P.C.
                BY:_____/s/ James M. Yannakopoulos_____
                JAMES M. YANNAKOPOULOS (#25164-45)
                425 Joliet Street, Suite 425
                Dyer, Indiana 46311
                (219) 865-6700

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 27th day of August, 2012 service of a true and correct copy of the above and foregoing pleading was made upon each party or attorney of record either via email notification or depositing in envelopes properly addressed to each of them and with sufficient first class postage affixed.

KORANSKY, BOUWER & PORACKY, P.C.


<u>/s/ James M. Yannakopoulos</u>