UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BARBARA V. PRINGLE as Independent Executor for the Estate of Arthur D. Pringle, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 2:09-CV-22 PPS-PRC ) ) |
| MARISA GARCIA, *et al.*, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Arthur Pringle brought this action in an attempt to recover some of the millions of dollars he lost after investing in Defendant Sergio Garcia's businesses. Sadly, Pringle died before he had the opportunity to recover anything. The executor of his estate, his wife Barbara Pringle, has been substituted as the Plaintiff in this case, and now seeks to pick up where Arthur Pringle left off [DE 248]. Barbara Pringle seeks partial summary judgment against Defendants Marisa Garcia, Sergio E. Garcia, Kerusso Konstruction Kompany LLC, Kerusso Real Estate LLC and Rehab Lending Tree, LLC for defaulting on a series of promissory notes. She also seeks to recover property that Garcia's companies pledged as collateral for loans. Plaintiff has demonstrated that there is no genuine issue of disputed fact with respect to liability on the promissory notes. Defendants breached the terms of the notes and will have to pay Pringle back. There is, however, still a disputed issue of fact regarding the exact amount of damages Plaintiff is entitled to. As for the collateral, Pringle neglected to file the requisite affidavit supporting her replevin action, so summary judgment on that claim will have to be denied for now.

Accordingly, Pringle's motion for partial summary judgment is **GRANTED IN PART**

and **DENIED IN PART**.

## BACKGROUND

I will briefly sketch the general outlines of this dispute before going into detail about each and every contract at issue. Most of the facts are undisputed. Arthur Pringle loaned Defendant Sergio Garcia's company, Kerusso Konstruction, LLC ("KK"), $2,470,000 in a series of eight transactions between September 2006 and March 2008. In return, KK executed promissory notes for each loan [DE 98-1; DE 98-2; DE 201 at 2-6]. From November 2006 to August 2008, Garcia made monthly interest payments on the notes, although he never paid any of the principal [DE 205 at 1-8; DE 220-2]. After August 2008, however, all payments stopped [*Id*.].

Pringle loaned another of Garcia's companies, Rehab Lending Tree, LLC ("Rehab"), $575,000 between November 2007 and May 2008 [DE 201 at 5-7]. Rehab also provided promissory notes for these loans [DE 98-2; DE 98-3]. In addition, on December 20, 2007, Pringle opened up a $2,000,000 line of credit to Rehab in the form of a revolving note [DE 98-2 at 10-12]. Rehab ultimately drew $1.8 million on the revolving line of credit between December 2007 and January 2008 [DE 201 at 5]. Again, Garcia made monthly interest payments on behalf of Rehab until August 2008, at which point, the payments stopped [DE 205 at 1-8; DE 220-2].

To secure the revolving note, Defendants Marisa Garcia, Sergio Garcia, KK and Kerusso Real Estate LLC ("KRE"), another of Garcia's companies, entered into a Guaranty and Collateral Agreement ("Guaranty Agreement") with Pringle [DE 98-4]. Under the terms of the agreement, the Garcias, KK and KRE personally guaranteed payment of all of Rehab and KK's obligations to Pringle [*Id*. at 2-6]. In addition, the agreement gave Pringle a security interest in all the

2

personal property owned by KK, KRE and Rehab [*Id*. at 9]. Pringle perfected the security interest by filing UCC-1 statements with the Indiana Secretary of State [DE 98-6 at 7-12].

After months of non-payment, Pringle accelerated the payments on the notes on December 12, 2008, making the entire unpaid loan balance and interest immediately due [DE 98-6 at 2-5; DE 205 at 1-8]. Defendants still did not pay, so Pringle brought this action seeking satisfaction of the promissory notes and enforcement of the security agreement, as well as alleging RICO violations against these and other defendants. Plaintiff now seeks summary judgment on the notes and the enforcement of the security agreement.

Here are the notes and contracts that are at issue:

### KK Note 1

To evidence a loan of $120,000, KK executed a promissory note dated September 15, 2006 in the amount of $100,000, payable to Arthur Pringle, with an annual interest rate of 40% [DE 98-1 at 2-4]. The terms of the note were later orally modified to a principal amount of $120,000 at 19% interest [DE 205 at 2].

### KK Note 2

To evidence a loan of $100,000, KK executed a promissory note dated October 2, 2006 in the amount of $100,000, payable to Arthur Pringle with an annual interest rate of 35% [DE 98-1 at 6-8]. The terms of the note were later orally modified to reduce the interest rate to 19% [DE 205 at 2].

### KK Note 3

To evidence a loan of $100,000, KK executed a promissory note dated November 16, 2006 in the amount of $100,000, payable to Arthur Pringle with an annual interest rate of 30%

[DE 98-1 at 10-12]. The terms of the note were later orally modified to reduce the interest rate to 19% [DE 205 at 2].

### KK Note 4

To evidence a loan of $700,000, KK executed a promissory note dated April 12, 2007 in the amount of $700,000, payable to Arthur Pringle with an annual interest rate of 25% [DE 98-1 at 14-17]. The terms of the note were later orally modified to reduce the interest rate to 19% [DE 205 at 3].

### KK Note 5

To evidence a loan of $500,000, KK executed a promissory note dated June 1, 2007 in the amount of $500,000, payable to Arthur Pringle with an annual interest rate of 25% [DE 98-1 at 18-20]. The terms of the note were later orally modified to reduce the interest rate to 19% [DE 205 at 3].

### KK Note 6

To evidence a loan of $400,000, KK executed a promissory note dated July 13, 2007 in the amount of $400,000, payable to Arthur Pringle with an annual interest rate of 25% [DE 98-2 at 2-4]. The terms of the note were later orally modified to reduce the interest rate to 19% [DE 205 at 4].

### KK Note 7

To evidence a loan of $300,000, KK executed a promissory note dated August 17, 2007 in the amount of $300,000, payable to Arthur Pringle with an annual interest rate of 25% [DE 98-2 at 6-8]. The terms of the note were later orally modified to reduce the interest rate to 19% [DE 205 at 4].

**KK Note 8**

To evidence a loan of $250,000, KK executed a promissory note dated March 19, 2008 in the amount of $250,000, payable to Arthur Pringle with an annual interest rate of 18% [DE 98-2 at 24-26]. Plaintiff maintains the terms of the note were later orally modified to increase the interest rate to 19% [DE 205 at 6]. Garcia denies this [DE 220-1 at 2].

**Rehab Note 1**

To evidence a loan of $200,000, Rehab executed a promissory note dated November 29, 2007 in the amount of $200,000, payable to Arthur Pringle with an annual interest rate of 18% [DE 98-2 at 10-12]. Plaintiff maintains the terms of the note were later orally modified to increase the interest rate to 19% [DE 205 at 4]. Garcia denies this [DE 220-1 at 2].

**Rehab Note 2**

To evidence a loan of $225,000, Rehab executed a promissory note dated April 7, 2008 in the amount of $225,000, payable to Arthur Pringle with an annual interest rate of 18% [DE 98-3 at 2-4]. Plaintiff maintains the terms of the note were orally modified to increase the interest rate to 19% [DE 205 at 6]. Garcia denies this [DE 220-1 at 2].

**Rehab Note 3**

To evidence a loan of $50,000, Rehab executed a promissory note dated May 23, 2008 in the amount of $50,000, payable to Arthur Pringle with an annual interest rate of 19% [DE 98-3 at 9-11].

**Rehab Note 4**

To evidence a loan of $100,000, Rehab executed a promissory note dated May 27, 2008 in the amount of $100,000, payable to Arthur Pringle with an annual interest rate of 19% [DE

98-3 at 14-16].

## Revolving Note

On December 20, 2007, to evidence Pringle's agreement to loan Rehab up to $2,000,000 on a revolving basis, Rehab executed a Secured Revolving Loan Note, whereby any outstanding balance on the note was payable to Pringle at an annual interest rate of 18% [DE 98-2 at 14-22]. Plaintiff maintains the terms of the note were later orally modified to increase the interest rate to 19% [DE 205 at 5]. Garcia denies this [DE 220-1 at 2].

Rehab racked up $1,800,000 in charges on the revolving note in eight cash advances:

- $300,000 on December 20, 2007
- $150,000 on January 3, 2008
- $200,000 on January 4, 2008
- $250,000 on January 14, 2008
- $400,000 on January 25, 2008
- $150,000 on February 7, 2008
- $150,000 on February 13, 2008
- $200,000 on February 28, 2008

[DE 205 at 5].

## Guaranty Agreement

To secure the revolving note, Pringle, Rehab, KK, KRE, Sergio Garcia and Marisa Garcia entered into a Guaranty and Collateral Agreement ("Guaranty Agreement") on December 20, 2007 [DE 98-1, 98-2]. In the agreement, Sergio Garcia, Marisa Garcia, KK and KRE each guaranteed the performance of all obligations Rehab, KK, and the other guarantors owed to

Pringle. [DE 98-4 at 3-6]. The guaranty included all the parties' obligations owed to Pringle "howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or heareafter existing, or due or become due" [DE 98-4 at 5]. In addition Rehab, KK and KRE granted Pringle a security interest in certain of their property as collateral for the loans [DE 98-4 at 9]. The collateral consisted of a) all personal property owned or acquired by Rehab, KK and KRE, b) all books and records pertaining to the property, c) all Proceeds and products of any of the personal property, and d) all collateral security and guaranties given by any person with respect to the personal property [DE 98-4 at 4].

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material facts exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250. In making this determination, I must construe all facts and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Id*. at 255. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must

7

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

Plaintiff seeks summary judgment on two counts of the complaint – first for breach of the notes and Guaranty Agreement, and second for replevin of the secured collateral. I'll address the breach of contract claim first.

**I.      Breach of Promissory Notes and Guaranty Agreement**

To be succeed on a breach of contract claim the plaintiff has to prove: (1) the existence of a contract; (2) breach by the defendant; and (3) damage or loss to the plaintiff. *Rogier v. AM. Testing & Eng'g Corp.*, 734 N.E.2d 606, 614 (Ind. Ct. App. 2000). The construction of a written contract is generally a question of law, and summary judgment is particularly appropriate because there are no issues of fact. *AgStar Financial Services, FLCA v. Rock Creek Dairy Leasing, LLC*, 709 F. Supp. 2d 691, 697 (N.D. Ind. 2010).

The Defendants have essentially conceded the breach of contract claim by failing to cite to any evidence against it in their brief. Plaintiff has presented evidence that Pringle loaned $4,845,000 to KK and Rehab, that KK and Rehab promised to pay the money back, and that they failed to do so. She also presented evidence that the Garcias, KK, and KRE agreed to guaranty repayment of those loans, but that they haven't repaid the money either. This evidence is essentially undisputed.

In their brief [DE 219] and Statement of Disputed Material Facts [DE 218], Defendants

make two arguments concerning the existence of and breach of the contracts. First they claim that there are genuine issues of fact regarding whether there might have been a novation of some contract. Second, they claim there are issues of fact regarding whether some of the transactions involved fraud in the inducement. The problem is that the Defendants failed to cite to or present any evidence at all in support of these arguments. While it is my responsibility to determine if a genuine issue of material fact exists, it's the Defendants' responsibility to make that determination possible by identifying relevant evidence. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). By not citing to or presenting evidence, Defendants have conceded Plaintiff's version of the facts on these issues. N.D. Ind. L.R. 56.1(b); *Waldridge*, 24 F.3d at 922; *Johnson v. Moeller*, 269 F. App'x 593, 595 (7th Cir. 2008) *citing Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (Courts won't "consider arguments that rely on bare conclusions without factual support.")

With this, Defendants have conceded liability on the breach of the notes and Guaranty Agreement. Each Defendant is on the hook for at least some part of the $4,845,000, with interest accruing daily. With liability taken care, the only ground left to fight over is the amount of damages. Defendants make three arguments against summary judgment on damages. First, they argue that the interest payments made on the loans were not correctly credited, creating an issue of fact as to the total amount owed. Next, they argue that the Guaranty Agreement is ambiguous as to whether it applies to notes created after it was signed. Finally, they argue that Rehab and KK never agreed to the modified interest rates on four of the notes. I'll address each argument in turn.

9

### A. Attribution of Defendants' Payments

Defendants argue that there is a genuine issue of fact with respect to the total amount of money they owe because some of the Defendants' payments may not have been credited. As evidence, they point to a list of payment amounts and dates, and Sergio Garcia's statement in his affidavit that "significant payments were made on the notes totaling more than $800,000.00." [DE 220-1 at 2; DE 220-2]. Plaintiff agrees and has provided a copy of the check for each and every one of the payments on Garcia's list, along with many receipts and invoices [DE 205-1 to DE205-8]. Since Defendants don't argue that any one payment was actually misattributed and their proffered evidence matches up exactly with Plaintiff's, the argument boils down to speculation that a payment *could* have been misapplied. This type of "metaphysical doubt" isn't enough to forestall summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

### B. Ambiguity of the Guaranty Agreement

Defendants also argue that the Guaranty Agreement is ambiguous as to whether it applies to the four promissory notes that post-date the Agreement. As I mentioned above, Defendants don't dispute that Sergio Garcia, Marisa Garcia, KK and KRE guaranteed payment of some of the KK and Rehab promissory notes or that KK and Rehab have defaulted on those notes. They do dispute Plaintiff's claim that, because of the default, the Garcias, KK and KRE are personally liable on all of the notes. This is a straightforward matter of contract interpretation, and I find that the Guaranty Agreement unambiguously applies to all of the promissory notes.

Under Indiana law, the interpretation of a guaranty is governed by the same rules applicable to other contracts. *Modern Photo Offset Supply v. Woodfield Group*, 663 N.E.2d 547, 549 (Ind. Ct. App. 1996). The words of the guaranty contract are given their ordinary meaning

and their terms are neither so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. *Loudermilk v. Casey*, 441 N.E.2d 1379, 1383 (Ind. Ct. App. 1982). Unambiguous contract language is conclusive upon the parties and the courts. *Scott v. Anderson Newspapers, Inc*., 477 N.E.2d 553, 559 (Ind. Ct. App. 1985). A contract is not ambiguous merely because the parties disagree about the proper interpretation of its terms, but only where a reasonable person could find that its terms are susceptible to more than one interpretation. *Arrotin Plastic Materials of Ind. v. Wilmington Paper Corp*., 865 N.E.2d 1039, 1041 (Ind. Ct. App. 2007).

Defendant's argument turns on the Guaranty Agreement's definition of "obligations." The agreement defines KK, KRE and Rehab as the "Kerusso Entities" [DE 98-4 at 3]. Marisa Garcia, Sergio Garcia, KK and KRE are defined as "guarantors" [*Id*.]. The agreement provides that the guarantors personally guaranty the "prompt and complete payment and performance" of "Kerusso Entity Obligations" [*Id*. at 6]. Here is how the term "Obligations" is defined:

> "all obligations (monetary (including post-petition interest, allowed or not) or otherwise) of any Guarantor and/or Kerusso Entity under this Agreement or the Note, including attorney's fees in each case howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing or due or become due"

[DE 98-4 at 5].

The Guaranty Agreement is broad, but it is not ambiguous. Each Guarantor undertook to personally guaranty the obligations of the Kerusso Entities and the other Guarantors that were parties to the agreement. This guaranty applied to "all obligations" of whatever type owed by any Guarantor or Kerusso Entity to Pringle. And it applied to obligations to Pringle "now or

11

hearafter existing or due or become due." In other words, Sergio Garcia, Marissa Garcia, KK and KRE not only guaranteed the obligations in force at the time of the agreement, but also those that would arise between the parties later. This conclusion is consistent with Indiana law. *See Goeke v. Merchants Nat. Bank and Trust Co. Of Indianapolis*, 467 N.E.2d 760, 766-67 (Ind. Ct. App. 1984) (holding terms of guaranty agreement covered any debt, including debt incurred in future transactions). Thus, the unambiguous language of the agreement compels the conclusion that each of the Guarantors is individually liable for all of the promissory notes signed by KK and Rehab, including the four notes that arose after the signing of the Guaranty Agreement.

### C. Interest Rate Modification

Defendants do have a serious argument over the interest rate on some of the notes. In his affidavit, Arthur Pringle stated that on June 1, 2008, the parties agreed to modify the annual interest rates on all of the outstanding promissory notes to a flat 19% for each note [DE 205 at 2-7]. Seven of the notes had interest rates above 19% and four had interest rates of 18% that were raised to 19%. In support, Plaintiff provided invoices and check copies showing Defendants made payments at that 19% rate from June 2008 until they defaulted in August [DE 205-1; DE 205-2 at 1-5]. Defendants agree that a modification happened for the seven notes whose original interest rates were above 19%, but claim that they did not agree to the modification for the four notes that originally had an 18% rate: KK note 7, Rehab note 1, Rehab Note 2, and the Revolving Note. Defendants' point to Sergio Garcia's affidavit, in which Garcia states that the Defendants "did not agree to an increased rate of 19% when the original note provided for an 18% rate." [DE 220-1 at 2].

So we have an instance of dueling affidavits with Pringle saying Garcia agreed to the one

12

percentage point increase and Garcia denying it. This is enough to create a genuine issue of fact with respect to this portion of the damages. In cases of dueling affidavits, I have to accept the non-movant's, Garcia's, version of the facts as true. *Hill v. Tangherlini*, 724 F.3d 965, 967-68 (7th Cir. 2013). This is the case even if Garcia's affidavit is, as Plaintiff argues, "self-serving." *Id.*

As noted above there is no genuine dispute over the Defendants' liability on the notes. Nor is there any dispute regarding the amount of principal each defendant owes. Plaintiff has established that Sergio Garcia, Marisa Garcia, KK, and KRE owe $4,485,000 in outstanding principal and Rehab owes $2,375,000 of that total as well.

The sole issue that remains in dispute with respect to Count I is the total amount of interest the Defendants owe. Plaintiffs are owed interest, but the amount of interest owed they allege in the complaint includes that disputed one percentage point increase for the four notes. Unfortunately, I don't have the materials in the briefs that would enable me to calculate exactly which portion of the alleged interest damages Plaintiff is entitled to, so I cannot include interest damages in the judgment today. Plaintiff is welcome to provide me with the necessary material by filing a supplemental brief detailing the total amount of interest damages that are not in dispute given my judgment on the 18% rate for the four disputed notes. With that as a basis, I will be able to enter judgment granting Plaintiff the undisputed portion of the interest damages.

**II.     Count II - Replevin and Foreclosure of Security Interest**

In addition to the judgment for damages, Plaintiff requests a replevin judgment granting her immediate possession of the Collateral named in the Guaranty Agreement. Under Indiana law, a claim for replevin is successful if the plaintiff proves her right to title or possession of

13

property, proves that the property is unlawfully detained, and proves that the defendant wrongfully holds possession of the property. *United Farm Family Mut. Ins. Co. v. Michalski*, 814 N.E.2d 1060, 1067 (Ind. Ct. App. 2004). Plaintiff has established a security interest in the collateral described in the Guaranty Agreement pursuant to Section 26-1-9.1-203 of the Indiana Code, and Pringle perfected the security interest by filing UCC-1 Financing Statements with the Indiana Secretary of State [DE 98-6 at 7-12].[1] It is black letter law that, upon default, a secured creditor has the right to take possession of the collateral securing its claim. *Dawson v. Fifth Third Bank*, 965 N.E.2d 730, 735 (Ind. Ct. App. 2012). There is no dispute that defendants have defaulted on the loans secured by the Guaranty Agreement and that therefore Pringle, as the secured party, had a right to take possession of the collateral. *Id*. at 736; Ind. Code § 26-1-9.1-609(a). Nor is there any dispute that Rehab, KRE and KK continue to wrongfully hold possession of the property.

However, before I can issue an order of replevin, Indiana law requires that Plaintiff support her claim for replevin by filing an affidavit which describes the property at issue and states (1) the plaintiff is the owner of the property or is lawfully entitled to possession, (2) the property has not been taken for a tax assessment or fine pursuant to statute; seized under an execution or attachment against the property of the plaintiff, or if seized, it is by statute exempt from seizure, (3) the property has been wrongfully taken and is unlawfully detained by the defendant, (4) the estimated value of the property, and (5) the county in which the property is being detained. *See* Ind. Code § § 32-35-2-3, 32-35-2-4. Plaintiff has not provided this

---

[1]The Defendants gestured at the argument that Pringle may not have perfected the security, but, as above, they failed to cite to any evidence, and so concede the argument. *Waldridge*, 24 F.3d at 922.

affidavit, so I am unable to grant summary judgment on the replevin claim at this time.

## CONCLUSION

Accordingly, Plaintiff's Motion for Partial Summary Judgment [DE 201] is **GRANTED IN PART and DENIED IN PART.**

1. Defendants Sergio Garcia, Marisa Garcia. Kerusso Konstruction, and Kerusso Real Estate are liable, jointly and severally in the amount of $4,485,000. This judgment amount shall accrue interest from the date of judgment at the legal rate of 0.13% computed daily and compounded annually until fully satisfied.

2. Defendant Rehab Lending Tree is jointly and severally liable for a $2,375,000 portion of the above damages. This judgment amount shall accrue interest from the date of judgment at the legal rate of 0.13% computed daily and compounded annually until fully satisfied.

3. Plaintiff shall have until **December 27, 2013** to file a supplemental brief describing the amount of interest she is owed in light of this judgment. She shall also have until **December 27, 2013** to file an affidavit supporting her claim for replevin that is compliant with Indiana Code § 32-35-2-4.

4. An **IN-PERSON** status conference is set for **January 7, 2014** at **10:00 a.m. Hammond/Central Time**.

**SO ORDERED**.

ENTERED: November 25, 2013   s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT