# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| BARBARA V. PRINGLE, Independent Executor for the Estate of Arthur D. Pringle III, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:09-cv-022-PPS-PRC ) |
| MARISA GARCIA, *et al.*, | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before me on *pro se* Defendant Jaime Garcia's motion to dismiss the claims against him in Plaintiff's third amended complaint [DE 239]. Plaintiff Barbara Pringle, as executor of the estate of Arthur Pringle, has alleged that Garcia violated the federal and state Racketeer Influenced and Corrupt Organizations (RICO) Acts. Garcia argues that Pringle has failed to adequately plead these claims. For the reasons stated below, I agree with the Defendant, and his motion is therefore **GRANTED.**

## BACKGROUND

Ordinarily I would not be considering a motion to dismiss five years into litigation, but this case has taken some odd twists and turns. Jaime Garcia was added as a defendant in Plaintiff's third amended complaint in February 2012 [DE 98]. But after that, then-Plaintiff Arthur Pringle neglected to file proof of service. So after a year of waiting for some indication that Jaime Garcia had been served, I finally dismissed him for failure to complete service pursuant to Rule 4 of the Federal Rules of Civil Procedure [DE 192]. It turned out, however, that

Pringle had in fact served Garcia, but had filed the proof of service as an attachment to a motion to dismiss rather than filing it directly to the docket. So in July 2013, I entered an order vacating Garcia's dismissal [DE 224]. Jaime Garcia answered the complaint in August 2013 [DE 227] and filed this motion to dismiss in October [DE 239]. But then Mr. Pringle died, and the motion was held in abeyance until his wife and executor, Barbara Pringle, could be substituted as plaintiff [DE 246]. After that was all sorted out, the motion became ripe in January 2014 and is before me now.

Since this case has been going on awhile, I have had the opportunity to discuss Plaintiff's allegations thoroughly in past orders. But for this motion, I am only going to recount the facts and allegations that are relevant to Jaime Garcia. Anyone looking for a more complete account of the complaint, can refer to my February 2013 order denying the first set of motions to dismiss [DE 189].

According to the factual allegations in the complaint, which I must accept as true for present purposes, Jaime's brother Sergio Garcia ran a criminal enterprise whose purpose was to induce potential investors to invest with Sergio's bogus companies [DE 98 at 40-45]. The enterprise, which Plaintiff calls the "Garcia Family," included Jaime, Sergio's wife Marisa, Sergio's daughter Elva, and Sergio's various companies. *Id.*

The late Arthur Pringle was a victim of the Garcia Family enterprise. He made a series of loans to two entities controlled by Sergio Garcia [DE 98 at 3-5]. One of the entities, Kerusso Konstruction Kompany, borrowed $2.47 million from Pringle. *Id*. at 5. The other entity, Rehab Lending Tree, borrowed $2.375 million. *Id.* These loans were never paid back.[1]

---

[1] Plaintiff Barbara Pringle has already won a $9.2 million judgment for breach of the promissory notes associated with the loans against Sergio Garcia, Marisa Garcia, and the entities [DE 250].

Plaintiff alleges Sergio told Mr. Pringle that the Garcias would use his funds to acquire, "rehab," and sell properties in Northwest Indiana. *Id*. at 30. But she contends that the Garcias didn't actually use the money to purchase and rehab properties. Instead, she claims, they used that money both for their own personal benefit and then to pay prior investors when they came looking for their money back [DE 98 at 30-34]. In other words, it was something of a Ponzi scheme. Plaintiff also asserts that the Garcias engaged in widespread bankruptcy fraud by transferring properties for inadequate consideration in the years and months before Sergio and his wife Marisa declared bankruptcy. *Id*. at 12-29.

According to the complaint, Jaime participated in the Garcia Family fraud scheme. In particular, the complaint alleges he played a role in inducing Arthur Pringle's investment in Rehab Lending Tree. In November 2007, after Pringle had already invested millions in Kerusso Konstruction Kompany, Sergio Garcia came to Pringle with another investment opportunity. *Id.* at 37. He represented that he had another, thriving, company – Rehab Lending Tree – that made loans to people so they could purchase the houses that Kerrusso Konstruction had fixed up. *Id*. at 37-38. According to the complaint, this was false, as Rehab had not made any loans and was not a separate, successful company. *Id.* at 38.

As part of the sales pitch, Sergio provided Arthur Pringle with a document, a sample borrower file, that Barbara Pringle now says was falsified. *Id*. at 45-47. She alleges Jaime Garcia created, or conspired with Sergio to create, the fraudulent document. *Id.* According to the complaint, Jaime convinced a friend from church, Darrell Audiss, to complete a loan application. *Id.* at 46. Once Audiss completed the application, Jaime and Sergio added Audiss's credit score and an appraisal of one of the Kerrusso houses to complete the file. *Id.* Sergio provided the file to Arthur Pringle representing that Audiss was a model borrower, when in fact, the Garcias had

not lent Audiss any money. *Id.* at 47. Sergio then altered the company's books to show that a loan had been made to Audiss and that Audiss had paid it back. *Id.* As a result, Pringle was convinced that Rehab would be a good investment opportunity, and he ended up providing Sergio Garcia with $ 1.8 million dollars. *Id.* at 48-49.

The complaint alleges two claims against Jaime Garcia. Count VI alleges he is liable under the federal RICO statute, 18 U.S.C. § 1961 *et seq*. *Id.* at 40-89. And Count VII alleges Jaime Garcia is liable pursuant to the Indiana RICO statute, Ind. Code § 35-45-6-1 *et seq*. and Ind. Code § 35-24-2-6. *Id.* at 89-92. Jaime claims that Barbara Pringle has failed to state a claim against him and asks me to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE 239]. However, because Jaime has already answered the complaint, I will construe his motion as a motion for judgment on the pleadings under Rule 12(c).

## DISCUSSION

The same standards apply to a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure as to dismissal motions under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bank*, 499 F.3d 629, 633 (7th Cir. 2007). "A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quoations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, but I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal,* 556 U.S. at 678-79.

RICO claims that involve fraud-based conduct are subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead all

4

allegations of fraud with particularity. *See Slaney v. The Int'l Athletic Fed'n,* 244 F.3d 580, 597 (7th Cir. 2001); *Kaye v. D'Amato,* 357 Fed. Appx. 706, 710 (7th Cir. 2009). Pleading with particularity means specifying the time, place, and content of the alleged false representations, and the method by which the statements were made. *See Slaney*, 244 F.3d at 597.

Barbara Pringle argues that she has sufficiently pled the federal and state law RICO claims against Jaime Garcia. In the alternative, she argues that, even if the substantive RICO counts fail, she has sufficiently pled a RICO conspiracy claim. I'll address the substantive RICO claims first, and then take on the conspiracy claim.

### A. Federal RICO Claim

Section 1962(c) of Title 18 prohibits persons "employed by or associated with" any RICO enterprise from conducting or participating "in the conduct of such enterprise's affairs through a pattern of racketeering or collection of unlawful debt." 18 U.S.C. § 1962(c). Therefore, to state a RICO claim under § 1962(c), a plaintiff must plead that the defendant engaged in the (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *See Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). It is not enough to simply allege the above elements in a boilerplate fashion; instead, the plaintiff must allege sufficient facts to support each element. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

The problematic elements here are (1) and (3) because, as I am about to explain, Pringle hasn't stated a plausible claim that Jaime Garcia engaged in "conduct." And she hasn't pled facts showing Jaime Garcia engaged in "a pattern" of racketeering activity.

The Supreme Court has held that, in order to satisfy the "conduct" element of § 1962(c), a plaintiff must allege that the defendant "participated in the operation or management of the

5

enterprise itself" and that the defendant played some part in directing the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This means that mere participation in the activities of an enterprise is insufficient; the defendant must participate in the operation or management of the enterprise. *Goren*, 156 F.3d at 727; *U.S. v. Cummings*, 395 F.3d 392, 397 (7th Cir. 2005).

None of the factual allegations in the complaint indicate that Jaime Garcia was involved in directing the Garcia Family enterprise. In fact, it's the opposite. Plaintiff's complaint is ninety-eight pages long. It describes the operation of the Garcia Family enterprise in admirable detail, describing dozens of transactions and the actors involved in each one. Yet, amidst all that detail, Jaime Garcia is mentioned a mere handful of times and is connected to only one transaction [DE 98 at 39, 45-49, 84-85]. So, far from managing or directing the Garcia Family enterprise, Jaime appears from the complaint to have barely been involved.

Further, the allegations indicate that Jaime didn't even manage the one transaction he was involved in. The complaint alleges that sometime after Sergio pitched Rehab Lending Tree to Arthur Pringle, "Sergio sought the assistance of his brother Jaime Garcia." [DE 98 at 46]. In response, Jaime Garcia contacted an acquaintance and convinced him to complete a loan application. *Id.* He then worked with his brother, Sergio, to compile the fraudulent sample borrower folder that Sergio, not Jaime, presented to Arthur Pringle. *Id.* Nothing here indicates that Jaime Garcia was operating or managing the Garcia Family. All the complaint suggests is that Jaime helped Sergio out with one of Sergio's many alleged fraudulent schemes. Even if Jaime knew what Sergio was planning to do, that is not sufficient, as performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to liability under 1962(c). *Goren*, 156 F.3d at 728.

Jaime Garcia's limited involvement poses another problem. Barbara Pringle has to make a plausible claim that Jaime Garcia engaged in a "pattern of racketeering activity." A "pattern of racketeering activity" requires at least two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5); *U.S. v. Tello*, 687 F.3d 785, 792 (7th Cir. 2012) ("to be guilty of the substantive 1962(c) offense, then, an individual must, among other things, participate in two or more predicate acts of racketeering"). In addition, Plaintiff has to satisfy the "continuity and relationship" test: the racketeering acts must be related to one another and pose a threat of continued criminal activity. *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 690 (N.D. Ill. 2012) (citing *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 238-39 (1989)). The test recognizes that, in enacting RICO, "Congress was concerned . . . with long term criminal conduct." *Vicom, Inc. v. Harbridge Merchang Servs., Inc.*, 20 F.3d 771, 780 (7th Cir. 1994).

Since Jaime only took part in one transaction, Plaintiff cannot establish a pattern of racketeering activity. The complaint alleges that the Garcia Family committed six racketeering acts: two acts of mail fraud, two acts of wire fraud, bank fraud and bankruptcy fraud [DE 98 at 45-83]. Jaime, however, is alleged to have taken part in only one of these acts – one act of wire fraud. After Sergio and Jaime made the sample borrower file, Pringle used wire transfers to send Rehab Lending Tree $1.8 million. *Id.* at 45-49. This constituted wire fraud and is one of the predicate acts alleged in the complaint. *Id.* But it's the only one of the alleged predicate acts Jaime is alleged to have participated in. Since the complaint does not allege that Jaime Garcia participated in at least two predicate acts of racketeering, Plaintiff's 1962(c) claim must be dismissed. *See Barr*, 912 F. Supp. 2d at 684 (N.D. Ill. 2012) (liability under 1962(c) "is limited to persons who have 'personally committed' at least two predicate acts of racketeering"); *Pelfresne v. Village of Rosemont*, 22 F. Supp. 2d 756, 764 (N.D. Ill. 1998) (dismissing RICO

claims against defendants because the Plaintiff did not adequately allege each defendant committed two predicate acts of racketeering).

To get around this deficiency, Plaintiff argues in her brief that each wire transfer Arthur Pringle made to Rehab constituted a separate predicate act of racketeering [DE 254 at 5]. Arthur made eight wire transfers, so Plaintiff argues, Jaime committed eight acts of racketeering activity.

This is mistaken. Although each transaction is a separate act of wire fraud, each is not a separate predicate act for RICO purposes. Courts in this circuit have repeatedly held that acts of wire or mail fraud committed over a brief span of time in furtherance of a single scheme and resulting in harm to one victim are insufficient to establish a "pattern of racketeering activity." *See SK Hand Tool Corp v. Dresser Indus., Inc.*, 852 F.2d 936, 940 (7th Cir. 1988) (no pattern when several acts of mail and wire fraud committed over the course of a few months in furtherance of a single scheme resulted in harm to one victim on one occasion); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990) (no pattern where a single scheme involved multiple acts of mail fraud); *Flextronics Int'l P.A., v. Copas*, 327 F. Supp. 2d 934, 937 (N.D. Ill. 2004) (no pattern where a scheme involved ten acts of mail and wire fraud in a seven month period causing a distinct injury to a single victim); *Bar*, 912 F. Supp.2d 671 at 690 (collecting cases holding that schemes lasting less than fourteen months were insufficient to establish a pattern of racketeering activity).

Here, each wire transaction was the result of a single scheme to defraud Pringle [DE 45-49]. Arthur Pringle was the only victim. *Id.* The scheme involved only one type of racketeering activity - wire fraud. *Id.* Pringle only suffered one kind of injury - economic loss. And the transactions took place over the course of a couple months - December 2007 to February 2008

*Id.* at 48-49. Since Plaintiff has not established Jaime Garcia engaged in a "pattern of racketeering activity," her 1962(c) claim must be dismissed.

    **B.    Indiana RICO Claim**

Indiana's RICO statute is patterned off of the federal statute, *See Kollar v. Indiana*, 556 N.E.2d 936, 940-41 (Ind. Ct. App. 1990), so, with one exception[2], the analysis is the same. The statute, IC 35-45-6-2(a)(3), prohibits a person "who is employed by or associated with an enterprise" from "knowingly or intentionally conduct[ing] or otherwise participat[ing] in the activities of that enterprise through a pattern of racketeering activity." Indiana law likewise defines a "pattern of racketeering activity" as "engaging in at least two (2) incidents of racketeering activity . . . " IC 35-45-6-1; *Waldon v. Indiana*, 829 N.E.2d 168, 177 (Ind. Ct. App. 2005) ("a pattern of racketeering activity requires at least two predicate acts"). Plaintiff has only alleged Jaime engaged in one incident of racketeering activity, so the state law claim must also be dismissed.

    **C.    RICO Conspiracy Claim**

Plaintiff argues that, in the event the substantive RICO claims don't survive, she has, at the very least, stated a federal RICO conspiracy claim under 18 U.S.C. § 1962(d). Section 1962(d) makes it unlawful for any person to conspire to violate the substantive RICO provisions. The Seventh Circuit has explained that a RICO conspiracy claim consists of two agreements. First an agreement to conduct or participate in the affairs of an enterprise. *Brouwer v. Raffensperger Hughes & Co.*, 199 F.3d 961, 967 (7th Cir. 2000) (citing *U.S. v. Neapolitan*, 791

---

[2] Indiana does not require that a RICO defendant participate in the operation or management of the RICO enterprise. *See Keesling v. Beegle*, 880 N.E.2d 1202, 1206 (Ind. 2008). So this particular reason for dismissal does not apply to Plaintiff's state law RICO claim.

F.2d 489 (7th Cir. 1986)). Second, an agreement to the commission of at least two predicate acts of racketeering. *Id.*

A RICO conspiracy claim avoids some of the pitfalls that proved fatal to the substantive RICO claim. The conspiracy claim applies to little fish as well as big fish, so it doesn't matter that Jaime Garcia did not operate or manage the Garcia Family. *See Cummings*, 395 F.3d at 397-98 (explaining that, for the purposes of 1962(d), the defendant need not agree to operate or manage a RICO enterprise, but only agree to facilitate the operators or managers). Nor is the fact that Jaime is alleged to have personally participated in only one act of racketeering activity necessarily a problem, as a conspiracy defendant need not have personally engaged in the alleged predicate acts. *Brouwer*, 199 F.3d at 964. Nevertheless, the RICO conspiracy defendant has to agree that *someone* will commit two or more predicate acts of racketeering activity. *Id.*; *Goren,* 156 F.3d at 732. And this is where Plaintiff's claim runs into trouble.

There is no allegation in the complaint that Jaime Garcia's agreement extended beyond the one act of racketeering he is alleged to have participated in. As I noted above, the complaint alleges six acts of racketeering activity: (1) commission of wire fraud by using wire transfers to accept $1.8 million from Arthur Pringle; (2) commission of mail fraud by using the mail system to accept $100,000 from Pringle; (3) commission of mail fraud by using the mail system to effectuate the fraudulent transfer of dozens of properties; (4) commission of bank fraud by failing to disclose liabilities when obtaining a loan; (5) commission of bankruptcy fraud by concealing assets and income from their creditors and by fraudulently transferring assets shortly before filing for bankruptcy; and (6) commission of wire fraud by sending via facsimile various documents involved in their alleged scheme to defraud Pringle [DE 98 at 45-83].

Plaintiff's conspiracy allegations very explicitly confine the scope of the conspiracy to the scheme to defraud Pringle. Here are all of the factual conspiracy allegations against Jaime Garcia:

> 81-T.  Jaime Garcia, the brother of Sergio Garcia, knowingly conspired with Sergio and his related entities, knowingly processed paperwork, and worked with Sergio and his related entities *to fraudulently acquire funds from Pringle*.
>
> . . .
>
> 101.  As a result *of their conspiracy to defraud Pringle*, and as a result of the actions of Sergio, Jaime Garcia and Rehab, in furtherance of their conspiracy, *Pringle advanced funds to Rehab*, believing that he would be the exclusive lender for Rehab.
>
> . . .
>
> 103.  Sergio, Jaime, and Rehab *conspired to defraud Pringle* of those funds he would eventually transfer to Rehab.

[DE 98 at 45, 47-48] (emphasis added).

For the conspiracy claim to stand, Plaintiff has to have alleged Jaime Garcia agreed that someone would commit two predicate acts of racketeering. Garcia was allegedly involved in predicate act (1), so that takes care of one act. Predicate acts (3), (4), and (5) are out because there is no indication in the complaint that Jaime Garcia had anything to do with, or was even aware of, the bankruptcy fraud or bank fraud schemes alleged in those acts, much less agreed someone would commit them. That leaves the predicate acts (2) and (6).

Predicate act (2) is a non-starter because it predates Jaime's involvement in the alleged conspiracy. Plaintiff alleges Sergio and Kerusso Konstruction committed an act of mail fraud

when Arthur Pringle advanced $100,000 to Kerusso Konstruction through the U.S. Mail [DE 49-50]. The mail fraud occurred in November 2006. *Id*. Jaime is not alleged to have entered the picture until nearly a year later – "some point in the late summer or fall of 2007." *Id.* at 46. Jaime couldn't have agreed to the commission of an act that took place before he joined the conspiracy.

Predicate act (6) will not suffice for the same reason the eight acts of wire fraud discussed above did not constitute a pattern of racketeering: the activity alleged in (6) is not sufficiently distinct from act (1) to count as a separate predicate act. As I noted, Plaintiff alleges that the first predicate act of racketeering was the wire fraud that resulted from Sergio Garcia's scheme to convince Arthur Pringle to invest in Rehab Lending Tree. Sergio and Jaime conspired to create a false borrower document, and Arthur Pringle took the bait - ultimately wiring $1.8 million to Rehab in between December 2007 and February 2008 [DE 98 at 45-49]. Predicate act (6) concerns the exact same transaction as alleged in (1), but the wire fraud is based on a different set of documents. Plaintiff alleges that Sergio, Marisa and certain entity defendants committed wire fraud when they faxed the signed loan agreements and fraudulent tax documents to Pringle to complete the Rehab Lending Tree deal in late 2007 [DE 81-82].

So acts (1) and (6) involve the same transaction, were part of the same scheme, took place in the same brief period of time, involved the same victim, and inflicted the same economic loss. The Seventh Circuit has cautioned that "the mere fact that the complexity of the transaction generates numerous pieces of paper and hence a greater number of possible fraudulent acts does not make these predicate acts ongoing over a period of time so as to constitute separate transactions distinct in time and place. *SK Hand Tool*, 852 F.2d at 940. That caution applies in force here as a multi-million dollar deal like this one is bound to generate a lot

of paperwork. And while each fax or wire transfer could represent a separate act of wire fraud, they are not separate acts of racketeering activity. *Id.*

To sum up then, Plaintiff has only alleged that Jaime Garcia agreed to the commission of one predicate act of racketeering. To state a RICO conspiracy claim, Plaintiff had to establish Jaime Garcia agreed to two. Consequently, the RICO conspiracy claim must be dismissed. *Goren,* 156 F.3d at 732.

## CONCLUSION

Therefore, for all of the reasons set forth above, the Motion to Dismiss (DE 298) is **GRANTED**. The claims against Jaime Garcia are **DISMISSED WITHOUT PREJUDICE**. Plaintiff will have thirty days to file an amended complaint if she believes she can cure the deficiencies in the complaint addressed by this order.

**SO ORDERED.**

ENTERED: April 23, 2014.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
